**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **MAX LEROY REED, JR., and ELIZABETH REED, individually and on behalf of all similarly situated individuals** | * | |
| **Plaintiff,** | * | |
| **vs.** | * | **Case No.11-00412-WS-C** |
| **JP MORGAN CHASE BANK, N.A., successor by merger to CHASE HOME FINANCE, LLC,** | * | |
| **Defendant.** | * | |

**NARRATIVE STATEMENT OF FACT AND LEGAL MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

COME NOW the Plaintiffs Max Leroy Reed, Jr., and Elizabeth Reed, ("Plaintiffs") and in support of their Motion for Summary Judgment, submit the following Narrative Statement of Fact and Legal Memorandum:

## NARRATIVE STATEMENT OF FACT

The facts in this case are straightforward. In November 2006, Mr. and Mrs. Reed refinanced the mortgage on their home. On November 13, 2006, Plaintiffs executed a real estate mortgage loan with Pensacola Guarantee Mortgage. The loan is secured by the Reeds' home at 10891 Weeks Bay Road in Foley. The loan was in the amount of $377,000.00. (See Exhibit 1 and Deposition of Max Reed ("Reed Depo.") attached hereto as Exhibit 2, pp. 6, 14-16).

The Mortgage identifies the Lender as Pensacola Guarantee Mortgage and designates Electronic Registration Systems, Inc. ("MERS") as the nominee for Lender and Lender's successors and assigns and as the "mortgagee." (See Ex. 1, p. 1). The mortgage also conveys to MERS legal title to the mortgage and the Lender's right to exercise the power of sale of take other actions

reserved for the Lender. (Id, p. 1-3).

In October 2007, Chase became the servicer of the loan. (See Deposition of Albert Smith, designated representative of Chase, attached hereto as Exhibit 3, p. 100).

In Summer of 2009 the Reeds began discussing a modification with Chase. Those discussions led to a Trial Plan Agreement under which the Reeds were required to make three consecutive payments in a reduced monthly amount. After the payment period, Chase was to permanently modify the loan. Although the Reeds made their trial payments, no modification was extended. The Reeds continued to make the trial payments, as instructed by Chase. By Summer 2010, however, Chase declared the loan in default and instituted foreclosure proceedings. (Reed Depo. (Ex. 2), pp. 62-63, 83).

On July 13, 2010, Chase sent the Reeds a written "Acceleration Warning (Notice of Intent to Foreclose." (See Exhibit 4). By letter dated September 3, 2010, Chase notified the Reeds that it was accelerating the debt secured by the mortgage and was publishing a foreclosure notice in the local newspaper. The acceleration notice reads in pertinent part: "by virtue of default in the terms of said note and mortgage, Chase Home Finance, LLC hereby accelerates to maturity the entire remaining unpaid balance of the debt, including attorney's fees, accrued interest and the other lawful charges in the amount due and payable as of the date of this letter is $401,843.95." (See Exhibit 5).

Neither the acceleration letter nor the "Acceleration Warning" mentioned identified any entity, other than Chase, as the lender.

On September 7, 2010, MERS, acting on behalf of the lender, executed an "Assignment of Mortgage" purporting to transfer the all the right title and interest of MERS to Chase Home Finance, LLC. That Assignment was executed by Colleen McCullough, a lawyer with the firm of Sirote &

Permutt, P.C., who signed as "Assistant Secretary and Vice President" of MERS. That Assignment was recorded in the probate office of Baldwin County, Alabama on or about September 14, 2010. (Exhibit 6).

Three days after the Assignment was executed, Chase published a foreclosure notice stating that the Reeds' mortgage was "*transferred and assigned to Chase Home Finance, LLC*" and that Chase would execute the power of sale and sell the Reed's property at auction. The notice also specified that "[t]his sale is made for the purpose of *paying the indebtedness secured by said mortgage. . ..*" (Exhibit 7)(emphasis added).

Prior to the foreclosure sale, the Reeds filed suit in Baldwin County Circuit Court seeking, among other things, to have the sale enjoined. Soon after receiving the suit, Chase cancelled the foreclosure sale.

At no time did Chase provide to the Reeds the notice required by 15 U.S.C. § 1641(g). (See Responses to Requests for Admission (Exhibit 8), No. 12).

**ARGUMENT**

**Standard for Motion to for Summary Judgment**

This Court has recently summarized the standards applicable to a motion for summary judgment as follows:

> Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991). "If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made. [citation omitted] If,

however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the nonmovant to show the existence of a genuine issue of material fact." *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1116 (11th Cir.1993). "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Clark,* 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986)) (footnote omitted); *see also* Fed.R.Civ.P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may ... consider the fact undisputed for purposes of the motion....").

Nelson v. Whirlpool Corp., CIV.A. 09-0520-WS-B, 2011 WL 245653 (S.D. Ala. Jan. 26, 2011)

**A. Section 1641(g) Notice Requirements**

Section 1641(g) was added to TILA as part of the Helping Families Save Their Homes Act of 2009. P.L. 111-12, 123 Stat. 1632, Section 404(a). Section 1641(g) provides as follows:

(g) Notice of new creditor

(1) In general

In addition to other disclosures required by this subchapter, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including--

(A) the identity, address, telephone number of the new creditor;

(B) the date of transfer;

(C) how to reach an agent or party having authority to act on behalf of the new creditor;

(D) the location of the place where transfer of ownership of the debt is recorded; and

(E) any other relevant information regarding the new creditor.

(2) Definition

> As used in this subsection, the term "mortgage loan" means any consumer credit transaction that is secured by the principal dwelling of a consumer.

15 U.S.C. § 1641(g).

The purpose of this section was to introduce into the law the "common sense" notion that if "[you] have a mortgage on your home, you ought to know who holds the mortgage." 155 Cong. Rec. S5098-99 (statement of Sen. Boxer). The new requirement is intended to provide "transparency and gives borrowers an additional tool to fight illegitimate foreclosures or to negotiate loan modifications that would keep them in their homes." Id. at p. 5099. The new provision targets the prevalent "hide-and-seek" aspect of mortgage lending by codifying the borrower's "basic right to know who owns their loan by requiring [notice] any time a mortgage loan is sold or transferred.." Id. . 155 Cong. Rec. S5098 (statement of Sen. Boxer). The provision was also intended to fill a then-existing enforcement gap regarding disclosure of loan ownership. Congress recognized that servicers are required to disclose the transfer of servicing rights (under RESPA) and that TILA Section 1641(f)(2) required servicers to provide the name of the obligor in response to a specific request by the borrower; but acknowledged that "servicers routinely ignore requests from homeowners for information on the noteholder." Id.

## B. "Covered Persons" Subject to Section 1641(g) Disclosure Requirements

Section 1641(g) imposes transfer disclosure requirements on the "creditor that is the new owner or assignee of the debt." 15 U.S.C. § 1641(g)(1). While the term "creditor" is defined in TILA, that definition centers around the original extension of credit, the Board, in issuing the implementing regulations, recognized that Congress, by imposing disclosure requirements on assignees, intended that Section 1641(g) apply to entities other than the original creditor.

The Board's definition of "Covered Persons" includes any entity that acquires *legal title* to the obligation, subject to certain specifically described exceptions.[1] That definition states as follows:

> Mortgage transfer disclosures.
>
> (a) Scope. The disclosure requirements of this section apply to any covered person except as otherwise provided in this section. For purposes of this section:
>
>> (1) A "covered person" means any person, as defined in § 226.2(a)(22), that becomes the owner of an existing mortgage loan by acquiring *legal title* to the debt obligation, whether through a purchase, assignment or other transfer, and who acquires more than one mortgage loan in any twelve-month period. For purposes of this section, a servicer of a mortgage loan shall not be treated as the owner of the obligation if the servicer holds title to the loan, or title is assigned to the servicer, solely for the administrative convenience of the servicer in servicing the obligation.
>
> * * *
>
> (c) Exceptions. Notwithstanding paragraph (b) of this section, a covered person is not subject to the requirements of this section with respect to a particular mortgage loan if:
>
>> (1) The covered person sells, or otherwise transfers or assigns legal title to the mortgage loan on or before the 30th calendar day following the date that the covered person acquired the mortgage loan which shall be the date of transfer recognized for purposes of paragraph (b)(2) of this section;
>>
>> (2) The mortgage loan is transferred to the covered person in connection with a repurchase agreement that obligates the transferor to repurchase the loan. However, if the transferor does not repurchase the loan, the covered person must provide the disclosures required by this section within 30 days after the date that the transaction is recognized as an acquisition on its books and

---

[1]Unless demonstrably irrational, Federal Reserve Board staff opinions construing the Act or Regulation should be dispositive". *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565 (U.S. 1980) See also *Clay v. Johnson*, 264 F.3d 744, 749 (7th Cir. 2001)( "The Official Staff Commentary to Regulation Z published by the Board is binding and dispositive in TILA cases unless the commentary is determined to be demonstrably irrational.")

> records; or
>
> (3) The covered person acquires only a partial interest in the loan and the party authorized to receive the consumer's notice of the right to rescind and resolve issues concerning the consumer's payments on the loan does not change as a result of the transfer of the partial interest.

12 C.F.R. § 226.39(a)(emphasis added).

**C. Assignment to Chase Conveyed "Legal Title."**

As this regulation makes clear, any entity that acquires *legal title* to a loan is covered by the disclosure requirements, subject to the subsection (c) exceptions.

"Legal title" is defined as "[a] title that evidences apparent ownership but does not necessarily signify full and complete title or a beneficial interest." Woodland Grove Baptist Church v. Woodland Grove Cmty. Cemetery Ass'n, Inc., 947 So. 2d 1031, 1041 (Ala. 2006), quoting Black's Law Dictionary 1523 (8th ed.2004); see also Sturdivant v. BAC Home Loans Servicing, LP, 2100245, 2011 WL 6275697 (Ala. Civ. App. Dec. 16, 2011). This is consistent with the Commentary which clarifies that a conveyance of partial interest in the obligation is enough to trigger the disclosure requirement. 12 C.F.R. 226 Official Commentary, § 226.39(a)(2).

The question here is whether the September 2010 MERS assignment conveyed at least the "apparent ownership" necessary to vest "legal title" in Chase for purposes of Section 1641(g). The evidence and Alabama law demonstrate that Chase acquired at least "apparent ownership," if not complete ownership, of the obligation and mortgage by operation of the September 2010 Assignment.

We start with the Mortgage itself. The Mortgage identifies the Lender as Pensacola Guarantee Mortgage. The Mortgage also describes MERS as the nominee for Lender and Lender's

successors and assigns and designates MERS as the "mortgagee." (See Ex.1, p. 1). MERS is likewise named in the conveyance language contained in the Mortgage: "Borrower irrevocably mortgages, grants and conveys to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with the power of sale, the following described property. . .." The parties further agreed that MERS would hold legal title to the mortgage and would possess the Lender's right to exercise the power of sale and take any other actions reserved for the Lender.

> Borrower understands and agrees that MERS holds only legal title to the interests granted by borrower in this security instrument, but *if necessary to comply with law* or custom, MERS, as nominee for Lender and Lender's successors and assigns, has the right to exercise any or all of those interests including but not limited to *the right to foreclose and sell the property*, to take any action required of Lender including but not limited to releasing and canceling this security instrument.

(Id., p. 2).

Thus, the Reeds' Mortgage granted MERS all of the rights vested in the Lender. MERS then conveyed all of these rights to Chase. This included the right to enforce the debt and exercise the power of sale. Specifically, the Reeds conveyed to MERS whatever rights that Alabama law might require in order to allow it to foreclose. Thus, all the rights held by the Lender necessary for foreclosure were conveyed to MERS and then, in September 2010, assigned to Chase. As explained below, those rights, by operation of Alabama law, necessarily include the entitlement to the money owed under the note.

This precise MERS arrangement was addressed by the Alabama Court of Civil Appeals in Crum v. LaSalle Bank, N.A., 55 So. 3d 266, 269 (Ala. Civ. App. 2009). The Crum mortgage contained the exact language quoted above from the Reeds' mortgage which nominates MERS to act for the Lender and specifically conveyed unto MERS. 55 So. 3d at 268. After default, MERS

assigned its interest to LaSalle Bank, N.A., which then foreclosed on Mrs. Crum's home. In her attempt to invalidate the foreclosure, Mrs. Crum argued that MERS did not have the capacity to convey the lender's interest in the note. Specifically, Crum argued that the MERS assignment alone could not have conveyed the lender's right to enforce the obligation and, therefore, could not convey standing under Section 35-10-1, Ala. Code (1975). Relying on the established rule in Alabama law that prohibits foreclosure by agency, Crum argued that a MERS assignment could not convey adequate standing to conduct a foreclosure in the name of the assignee. After examining the powers conveyed to MERS in the mortgage, the court held that the foreclosure was proper because the conveyance language in the mortgage was broad enough to convey to MERS all of the rights of the lender, including the entitlement to the money thus secured, and that a assignment from MERS conveyed those rights to the assignee.

> MERS was . . .expressly acknowledged by the borrower in the mortgage instrument itself as not only having "any or all of [the lender's] interests" in the mortgaged property, but also as having the power "to take any action required of" the lender. The mortgage instrument further expressly provided that the note and the mortgage could be sold without prior notice to the borrower, and the assignment by MERS to the assignee of the mortgage, the note, and "all moneys" due was undertaken for consideration that included a $10 payment to MERS. **Thus, taken together, the pertinent documents indicate (a) that MERS was authorized to perform any act on the lender's behalf as to the property, including selling the note and the mortgage to a third party; and (b) that MERS fully exercised that power in favor of the assignee for valuable consideration.**

Crum v. LaSalle Bank, N.A., 55 So. 3d 266, 269 (Ala. Civ. App. 2009)(emphasis added). Because of the powers conveyed to MERS, and then assigned to LaSalle, the court held that a foreclosure by LaSalle was not a foreclosure by agency as prohibited under Alabama law. Id. at 269-270. Likewise, the assignment by MERS to Chase in the case at bar conveyed all of MERS' interest which included all the powers vested in the "Lender" and this certainly includes at least the apparent

ownership of the debt.

**2. Chase Acted as Lender after Assignment**

Chase takes the position here that it was never entitled to the money secured, that it never owned the obligation and that it simply took the assignment to act on Fannie Mae's behalf for foreclosure. As stated below, Alabama law does not allow this "foreclosure by proxy" arrangement. Moreover, this limited role which Chase now describes stands in stark contract to the power it demonstrated by its actions after the assignment. There can be no doubt that after it acquired the rights conveyed in the assignment, it acted as the lender in every significant way. When it started foreclosure, Chase made clear to the Reeds that it was the entity that was accelerating the debt owed under the note: "Chase Home Finance, LLC hereby accelerates to maturity the entire remaining unpaid balance of the debt..." (See Exhibit 5). Three days after the Assignment was executed, Chase published a foreclosure notice stating that the Reeds' mortgage was "*transferred and assigned to Chase Home Finance, LLC*" and that Chase would execute the power of sale and sell the Reed's property at auction. The notice also specified that "[t]his sale is made for the purpose of *paying the indebtedness secured by said mortgage. . ..*" (Exhibit 7)(emphasis added). In order to accelerate the debt, notice a foreclosure and prepare to sell property "for purposes of paying" the underlying debt, all in its own name, Chase certainly acted as if it owned the legal title, if not the equitable title to debt.

It is further undisputed that had the foreclosure not been judicially stopped, Chase would have foreclosed in its own name and Chase would have conveyed title to the Reeds' property in a foreclosure deed.

Q. . . .Of course, the foreclosure -- actual foreclosure sale didn't happen here, but you are familiar with the general process that leads to a foreclosure sale and foreclosure deed, correct?

A. Yes.

Q. Okay. In cases where -- Well, based on your familiarity with the general process, if There would have been a foreclosure sale as noticed in the notice we just saw, it would have been in -- it would have been conducted by Chase Home Finance, L.L.C., right? The foreclosure sale would have been conducted in Chase Home Finance, L.L.C.'s name?

A. Correct.

* * *

Q. . . . Had there been a foreclosure sale, there would have been a foreclosure deed executed by Chase Home Finance, L.L.C. to whomever the purchaser at the foreclosure was?

* * *

A. Yes.

Q. Okay. And that typically gets recorded in local Probate Court right, the foreclosure deed?

A. I believe so, yes.

(Exhibit 3, p. 103-105).

There is nothing in the documents provided to the Reeds at time, or in the information published in the newspaper, that identifies any entity other than Chase as the lender. There likewise is no qualification stated in the foreclosure notice, or the acceleration notice, which would indicate anything other than Chase had assumed of all of the powers granted the lender. At no time after the assignment did Chase indicate that it was acting for any other entity. It is only in the context of this suit that Chase has claimed that the status created by the assignment was something short of lender.

This qualified status is not only contradicted by Chase's own actions, it is also contrary to Alabama law. There is simply no allowance under the law for an entity to assume the power to foreclose without also holding legal title to the underlying debt.

**3. Assignment of Mortgage Transfers at Least Legal Title to the Debt**

Chase would have this Court treat as completely separate ownership of the debt from the interests conveyed in the mortgage. In Chase's view, the unqualified conveyance of the Lenders' interest is without consequence as to the debt. The only purpose of the assignment, in Chase's view, is to allow Chase to conduct the foreclosure in its own name.

On the other hand, Chase's witness concedes that the assignment, at a minimum, grants it status as "mortgagee of record."

Q. But looking at the assignment, the September 2010 assignment, now is what -- From what you are saying, I gather that prior -- your understanding is that prior to that assignment the mortgagee of record is MERS?

A. Yes. In the county records the mortgagee would be MERS.

Q. By virtue of what the mortgage that is recorded says about who the mortgagee is and that MERS is the nominee for the lender and all that language we went over this morning, right?

A. Yes.

Q. Okay. But that changed in September 2010 by virtue of the assignment, didn't it?

A. Yes.

Q. And after -- As a result of the assignment, you would agree with me that Chase Home Finance, L.L.C. became the mortgagee of record by virtue of that assignment, right?

A. Yes. For the purpose of the -- processing the foreclosure.

Q. For whatever purpose, when the foreclosure notice was published, Chase was

the mortgagee of record?

A. Yes.

(Exhibit 3, pp. 192-93).

As stated above, Section 1641(g) is triggered by conveyance of "legal title" which is defined in Alabama as "apparent ownership." Woodland Grove Baptist Church v. Woodland Grove Cmty. Cemetery Ass'n, Inc., 947 So. 2d 1031, 1041 (Ala. 2006). The Court could properly find that Chase's admitted status of "mortgagee of record" at least equates to "apparent ownership" and legal title. But even if that not be the case, Alabama law dictates that the power to foreclose, which Chase admits to have acquired, must necessarily be coupled with the right to enforce the debt. This moves Chase's status beyond "apparent" to actual title to the debt, for it is not possible in Alabama to hold the power to foreclose and not also own the debt.

In Alabama, a "title theory" state, the legal title vested in the mortgagee and the enforcement of the note are presumed to be inseparable.

> Where a power to sell lands is given to the grantee in any mortgage, or other conveyance intended to secure the payment of money, *the power is part of the security, and may be executed by any person, or the personal representative of any person who, by assignment or otherwise, becomes entitled to the money thus secured*; and a conveyance of the lands sold under such power of sale to the purchaser at the sale, executed by the mortgagee, any assignee or other person entitled to the money thus secured, his agent or attorney, or the auctioneer making the sale, vests the legal title thereto in such purchaser.

.Ala. Code § 35-10-1 (1975).

The legal title created under a mortgage and held by the mortgagee is inseparable from the entitlement "to the money thus secured." Alabama law has long held that any entity which, as Chase did here, endeavors to enforce its legal title to the security and the power of sale, must also be the entity "entitled to the money thus secured." One must go with the other. Thus, an assignment of

the mortgage is presumed to also transfer the debt secured thereby. Agricola Partners, Inc. v. Parker, 655 So. 2d 967, 968-69 (Ala. 1995); Seabury v. Hemley, 174 Ala. 116, 121, 56 So. 530, 531 (1911); Crum, 55 So. 3d at 269. This is consistent with the general common law rule that "a transfer of a mortgage also transfers the obligation the mortgage secures unless the parties to the transfer agree otherwise." *Restatement (Third) of Property: Mortgages* § 5.4(b) (1997); see also, Carpenter v. Longan, 83 U.S. 271 (1872)("The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity.")

In Alabama, no entity can on the one hand disclaim title to the debt (ability to enforce the note) and claim to stand as mortgagee for purposes of exercising the power of sale: "But an agent of such holder to whom the mortgage is delivered merely for the purpose of foreclosure, having no ownership of the debt, is not authorized to foreclose in his own name, and execute a deed in his name to the purchaser." Carpenter v. First Nat. Bank, 236 Ala. 213, 215, 181 So. 239, 240 (1938). The Alabama Supreme Court has clarified that the foreclosing entity must not only hold the legal title vested in the mortgagee, but also that such title can only be transferred by a written conveyance under the rules applicable to conveyances of real property interests.

> It is deemed appropriate to observe that in order to foreclose a mortgage of realty in equity, the holder of the legal title is an indispensable party and unless the assignment of the mortgage was in writing duly executed, as are other conveyances of land, legal title did not pass and the original mortgagee would be a necessary party to the proceeding. Federal Land Bank of New Orleans v. Branscomb, 213 Ala. 567, 105 So. 585; Langley v. Andrews, 132 Ala. 147, 31 So. 469. See also **381 Simpson v. James R. Crowe Post No. 27, American Legion, 230 Ala. 487, 161 So. 705.

Dean v. Clark, 270 Ala. 55, 56, 116 So. 2d 379, 380-81 (1959).

In Fed. Land Bank of New Orleans v. Branscomb, 105 So. 585 (Ala. 1925), the court the

described the consequences of assigning the note without the mortgage and the policy reasons for the requiring both be held by the foreclosing entity.

> The assignment of the note secured by mortgage passes merely an equity in the security. The legal title remains in the mortgagee. This passes only upon an assignment in writing, duly executed as other conveyances of land. We have a statute enlarging the effect of a power of sale in the mortgage which passes with the debt, and when exercised has the effect of a foreclosure in equity wherein all parties are present. Code, § 9010. But until the power is exercised, an assignment without apt words of conveyance leaves the legal title in the mortgagee, who is a necessary party to a bill in equity for foreclosure. Langley v. Andrews, 132 Ala. 147, 31 So. 469.
>
> The assignee of the note only, therefore, holds only a secret equity as to third persons having no connection with the paper. The mortgagee holds the legal title in trust, it is true, for the owner of the debt, but it is a secret trust as to outsiders. The law of negotiable instruments is not intended to overturn the rules of law governing titles to land. By failure to take an assignment which is subject to record as other conveyances, the assignee of the note thus leaves the mortgagee the record owner, the actual owner of the legal title, placing him in position to defraud innocent parties. Where one of two innocent persons must suffer, it must be the one who has placed the other in position to be defrauded. The law does not presume fraud, and does not impose upon persons the duty to presume fraud, in the absence of circumstances of suspicion.

Fed. Land Bank of New Orleans v. Branscomb, 213 Ala. 567, 569, 105 So. 585, 587 (1925).

The entity conducting the foreclosure must also be the entity entitled to the money secured because the homeowner holds an equitable right of redemption: the absolute right to cut off the foreclosure by paying the debt prior to the sale. This was explained by the Alabama Supreme Court as follows:

> The mortgagor, or those standing in his shoes, to whom the equity of redemption has been conveyed by the mortgagor, has the undoubted right to pay the mortgage debt and lawful charges incurred incident to a proceeding to foreclose at any time before the foreclosure is perfected, and this right would be greatly embarrassed, if not entirely destroyed, if one who has a mere contingent interest in the debt, and who has not a present right to receive the payment and discharge the mortgage, can exercise the power of foreclosure, and this is especially true where the mortgage and the debt thereby secured has been pledged to some person unknown to the mortgagor.

> The clear test of the right of an assignee of the mortgage to exercise the power of sale under the statute is that such assignee is entitled to receive the money secured by the mortgage. Wildsmith v. Tracy et al., 80 Ala. 258; Harton v. Little et al., 176 Ala. 267, 57 So. 851; Johnson v. Beard, 93 Ala. 96, 9 So. 535.

Kelly v. Carmichael, 217 Ala. 534, 537, 117 So. 67, 70 (1928).

While the mortgagee must also be entitled to the money secured in order to foreclose, the mortgagee is also a necessary party to a suit to enforce the note. Agricola Partners, Inc. v. Parker, 655 So. 2d 967, 968-69 (Ala. 1995). That case involved a mortgage and note originally held by brother and sister. By agreement between the two, sister conveyed her one-half interest in the mortgage but retained ownership of the note. She sued on the note and the trial court granted her summary judgment. The Supreme Court reversed holding that the brother, as mortgagee, was an indispensable party to the suit to enforce the note. Id., at 968-69.

The upshot of this is that there is no allowance under Alabama law for the status that Chase now claims to have been created by the assignment: the power to foreclose but without any title to the underlying debt. For it to have the power it assumed after the assignment, Chase must have received the right to collect the money secured by the mortgage. The rights conveyed by the assignment bestowed upon Chase at least "apparent" if not complete ownership of the mortgage and the underlying debt. In any event, Chase acquired "legal title" to the debt and mortgage, as well as the secured property, and the Section 1641(g) requirements were triggered.

.

**CONCLUSION**

For all the reasons stated above, there is no genuine issue of material fact and the undisputed facts establish that Chase acquired through the assignment all the rights of the Lender, including the right to enforce and collect the original debt and that these rights, at a minimum, constitute "legal

title" sufficient to trigger the Section 1641(g) notice requirement. Plaintiffs are entitled to summary judgment.

\s\Kenneth J. Riemer
KENNETH J. RIEMER
EARL P. UNDERWOOD, JR.
Underwood & Riemer, P.C.
P.O. Box 1206
Mobile, Alabama 36633
(251) 432-9212
(251) 433-7172 (fax)
Email: kjr@alaconsumerlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on February 24, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the counsel of record.

\s\Kenneth J. Riemer
KENNETH J. RIEMER (RIEMK8712)