# EXHIBIT A



**ROBERT JACOBSEN, et al., Plaintiffs, v. AURORA LOAN SERVICES, LLC, et al., Defendants.**

**No. C 12-0135 RS**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

*2012 U.S. Dist. LEXIS 111503*

**August 8, 2012, Decided**
**August 8, 2012, Filed**

**COUNSEL:** **[*1]** For Robert Jacobsen, Plaintiff: Michael James Yesk, LEAD ATTORNEY, Law Offices of Michael Yesk, Pleasant Hill, CA; Robert Edwin Jacobsen, Lafayette, CA.

For Michael T. O'Brien, Plaintiff: Michael James Yesk, LEAD ATTORNEY, Law Offices of Michael Yesk, Pleasant Hill, CA.

Mr. Michael Yesk, Plaintiff, Pro se, Pleasant Hill, CA.

For Cal-Western Reconveyance Corporation, Defendant: Sonia Ariella Plesset, LEAD ATTORNEY, Nicole Kimberly Neff, Wright, Finlay & Zak, LLP, Newport Beach, CA; Bradford Ellis Klein, Wright, Finlay Zak, LLP, Newport Beach, CA; Victoria Elena Edwards, Akerman Senterfitt, Denver, CO.

For Aurora Loan Services, LLC, a Delaware Limited Liability Company, Defendant: Justin D. Balser, LEAD ATTORNEY, Akerman Senterfitt LLP, Los Angeles, CA; Victoria Elena Edwards, LEAD ATTORNEY, Akerman Senterfitt, Denver, CO.

For Mortgage Electronic Registration Systems, Inc., Defendant: Victoria Elena Edwards, Akerman Senterfitt, Denver, CO.

**JUDGES:** RICHARD SEEBORG, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** RICHARD SEEBORG

**OPINION**

**ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, GRANTING AURORA'S MOTION FOR SUMMARY JUDGMENT, AND GRANTING CAL-WESTERN'S MOTION TO DISMISS**

I. INTRODUCTION

   Plaintiff Robert Jacobsen **[*2]** initiated this action in the small claims division of Contra Costa County Superior Court, seeking to rescind a trustee's deed issued to defendant Aurora Loan Services, LLC after a non-judicial foreclosure sale of residential real property. Jacobsen, who had obtained a grant deed to the property from the prior owner, also sought to compel issuance of a new trustee's deed in his favor, contending that his cash bid of $500 at the foreclosure sale should have been recognized as the winning bid, rather than Aurora's bid of approximately $1.5 million. After defendants removed the action to this court, Jacobsen filed an amended complaint, in which Michael O'Brien, the original property owner, joined as a plaintiff. While the amended

complaint asserts additional theories of liability, it prays for substantially similar relief, plus damages. The amended complaint also names Mortgage Electronic Registration Systems, Inc. ("MERS") as a defendant, in addition to Aurora and Cal-Western Reconveyance Corporation, the entity that conducted the foreclosure sale.

Plaintiffs now seek partial summary judgment, arguing that they are entitled to equitable relief as a matter of law on the basis that the original **[\*3]** lender purportedly was not a legal entity capable of entering into the deed of trust under which the foreclosure took place. Aurora and MERS, in turn, seek summary judgment on all plaintiffs' claims. Cal-Western separately moves to dismiss the complaint on grounds that it fails to state a claim. For the reasons set out below, plaintiffs' motion will be denied, and defendants' motions will be granted.

II. BACKGROUND

A. Procedural history

As noted, this matter began in the small claims division of the state court and was removed here by defendants. Aurora then moved to dismiss the complaint. Jacobsen responded by acknowledging that the complaint, filed on small claims court forms, was inadequate, and he requested leave to amend. Before the motion was heard, Jacobsen filed a First Amended Complaint, in which O'Brien joined as a co-plaintiff. Both Jacobsen and O'Brien were appearing *in pro se* at that juncture. While leave to amend had not been expressly granted, Jacobsen presumably was exercising his right under *Rule 15(a) of the Federal Rules of Civil Procedure* to amend once as a matter of course, and defendants have not objected that the filing was procedurally improper.

Several days later, **[\*4]** plaintiffs filed another document, also entitled as a "First Amended Complaint," but docketed as the "Second Amended Complaint." That document, filed by counsel on behalf of plaintiffs, contains several minor changes to the First Amended Complaint, none of which would affect the analysis in this order. In any event, plaintiffs have subsequently disclaimed the latter pleading, asserting it was filed in error. Accordingly, the operative pleading is the First Amended Complaint, filed February 3, 2012 (Dkt. No. 8). As such, the original motion to dismiss filed by Aurora (Dkt. No. 5) is moot, and it will be denied on that basis.

Shortly after filing the First Amended Complaint, plaintiffs moved for partial summary judgment. Aurora, now joined by MERS, opposed the motion and filed their own cross-motion for summary judgment, in lieu of answering or moving to dismiss. Cal-Western, which is separately represented, moved to dismiss.

On its own motion, the Court directed the parties to provide further briefing as to whether there was a jurisdictional basis to remove the action to this Court. All sides have responded urging the Court to assert jurisdiction, on various grounds. As explained below, **[\*5]** while it remains doubtful that there was a basis for removal at the time the notice was filed, jurisdiction is now proper, and the motions for summary judgment and dismissal may be considered on the merits. Pursuant to *Civil Local Rule 7-1*, those motions are appropriate for disposition without oral argument.

B. Underlying transactions

In 2006, O'Brien and his then-spouse obtained a loan for $1,240,000, to be secured by the real property that is the subject of this action. The lender was identified in the loan documents as "Direct Funding," or in some instances as "Direct Funding, a California Corporation." The loan was originally serviced by GreenPoint Mortgage Funding, Inc. Aurora took over as the loan servicer in 2007.

Aurora contends the O'Briens' monthly payments became erratic beginning in 2009, and stopped altogether after November of 2010. Following the default, MERS, the beneficiary under the deed of trust, assigned its interest to Aurora, and Cal-Western was substituted as the trustee.

In March of 2011, Cal-Western commenced foreclosure proceedings by recording a notice of default against the property. In July of 2011, presumably in connection with the dissolution of their marriage, **[\*6]** O'Brien and his wife executed a deed conveying the property to him alone. The validity of that transaction is not an issue in these proceedings.

A trustee's sale eventually went forward on September 13, 2011. The day before that sale, O'Brien deeded his interest in the property to Jacobson, noting on the deed that it was "fully encumbered." Jacobsen appeared at the trustee's sale and tendered a $500 cash bid. Cal-Western, however, issued a trustee's deed

conveying the property to Aurora for its winning cash bid of $1,513,815.43. Plaintiffs have offered evidence that Aurora participated in the sale through Cal-Western--i.e., that no representative of Aurora was physically present at the auction. They also insist that Aurora's bid was a "credit" bid, but have offered no evidence to dispute the representation in the trustee's deed that it was a cash bid. [1]

> 1    Plaintiffs appear to be relying on a presumption that if Aurora was not physically present at the sale to tender a cash payment, its bid must have been a credit bid. They have failed to show, however, that to have been the case.

## III. LEGAL STANDARDS

### A. Motions to dismiss

A complaint must contain "a short and plain statement of the claim [*7] showing that the pleader is entitled to relief." *Fed. R. Civ. P. 8(a)(2).* While "detailed factual allegations are not required," a complaint must include sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)* (citing *Bell Atlantic Corp. v. Twombly, 550 US 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).* A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A motion to dismiss a complaint under *Rule 12(b)(6) of the Federal Rules of Civil Procedure* tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).* Dismissal under *Rule 12(b)(6)* may be based either on the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).* When evaluating such a motion, the court must accept all material allegations in the complaint as true, even if doubtful, and construe them in the light most favorable to the non-moving party. *Twombly, 550 US at 570).* [*8] "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co., 83 F.3d 1136, 1140 (9th Cir. 1996); see also Iqbal, 129 S. Ct. at 1949* (citing *Twombly, 550 US at 555* ("threadbare recitals of the elements of the cause of action, supported by mere conclusory statements," are not taken as true).

### B. Motions for summary judgment

Summary judgment is proper "if the pleadings and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c).* The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).* The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings and admissions on file, together with the affidavits, if any which it believes demonstrate the absence of a genuine issue of material fact." *Id. at 323* (citations and internal quotation [*9] marks omitted). If it meets this burden, the moving party is then entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of the case with respect to which he bears the burden of proof at trial. *Id. at 322-23.*

The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Fed. R. Civ. P. 56(e).* The non-moving party cannot defeat the moving party's properly supported motion for summary judgment simply by alleging some factual dispute between the parties. To preclude the entry of summary judgment, the non-moving party must bring forth material facts, *i.e.,* "facts that might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).* The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 588, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).*

The court must draw all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight [*10] to be accorded particular evidence. *Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 111 S. Ct. 2419, 115 L. Ed. 2d 447 (1991)* (citing *Anderson, 477 U.S. at 255*); *Matsushita, 475 U.S. at 588 (1986).* It is the court's responsibility "to determine whether the 'specific facts' set forth by the

nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec. Service v. Pacific Elec. Contractors, 809 F.2d 626, 631 (9th Cir. 1987).* "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson, 477 U.S. at 248.* However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita, 475 U.S. at 587.*

## IV. DISCUSSION

### A. Jurisdictional issue

As noted, an order to show cause previously issued, directing defendants to address whether removal on the stated grounds of diversity was proper, given Cal-Western's status as a citizen of California. In response, all parties urge the Court **[*11]** to assert jurisdiction. Cal-Western argues that the Court should simply take up and grant its motion to dismiss, thereby removing it from this action. That argument lacks merit, as it would be improper to address the merits of Cal-Western's motion without a basis to exercise jurisdiction in the first instance.

Aurora and MERS offer the theoretically tenable argument that Cal-Western's citizenship may be disregarded, because it was "fraudulently" joined. Aurora and MERS also contend that even if diversity jurisdiction was lacking at the time of the removal, the federal Truth in Lending Act ("TILA") claim added to the First Amended Complaint provides a basis for going forward in this forum now. Plaintiffs, in turn, dispute that Cal-Western was fraudulently joined, but they purport to "consent" to the removal, and also argue that the TILA claim now supports jurisdiction.

Although removal jurisdiction cannot be manufactured by a plaintiff's "consent," Aurora, MERS, and plaintiffs are correct that the inclusion of the TILA claim in the First Amended Complaint permits the Court to exercise jurisdiction now, whether or not removal was proper at the outset. *See Chabner v. United of Omaha Life Insurance Co., 225 F.3d 1042, 1046 n. 3 (9th Cir. 2000)* **[*12]** (holding that post-removal amendment of complaint to add federal claim supported jurisdiction

despite "questionable" assertion of diversity jurisdiction at time of removal).

### B. Plaintiffs' claims

While pleaded in seven counts, the First Amended Complaint rests on four basic theories. Defendants have shown each of them to be without merit.

#### 1. The lender's legal status

The sole ground of plaintiffs' motion for summary judgment, and the primary basis for their opposition to defendants' motions, is their contention that the deed of trust recorded against the property was *void* from the outset, because "Direct Funding" is not, and has never been, a legally incorporated entity with the power to enter into contracts. The undisputed facts, however, show that "Direct Funding" was merely a fictitious business name used by Bush & Hewitt Holding, Inc., which at all relevant times was a duly formed California corporation, and that Bush & Hewitt had filed appropriate fictitious business name statements in accordance with California law. Plaintiffs' arguments that there nevertheless is some triable issue of fact because certain documents misstate the company name as Bush & Hewitt Holdings, Inc., or because **[*13]** the loan documents did not disclose the corporate name, border on the frivolous. Likewise, the mere fact that the deed of trust referred to "Direct Funding, A California Corporation," does not support a conclusion that it is void as a result. While it arguably was not technically correct to refer to Direct Funding, rather than Bush & Hewitt as a "California Corporation," plaintiffs' suggestion that the O'Briens therefore had no obligation to repay the $1.24 million they received, or that the loan cannot be deemed to have been secured by the property, is untenable.

#### 2. The purported TILA violation

While the First Amended Complaint fails to identify precisely how plaintiffs contend TILA was violated, the parties agree that the issue is whether or not Aurora ever became an *owner* of plaintiffs' loan, such that a duty to give written notice arose under *15 U.S.C. § 1641(g).* Aurora has shown that it merely became a *servicer* of the loan, and therefore no duty to notify under *§ 1641(g)* was triggered. *See 12 CFR § 226.39(a)(1)* ("a servicer of a mortgage loan shall not be treated as the owner of the obligation if the servicer holds title to the loan, or title is assigned to the servicer, solely **[*14]** for the

administrative convenience of the servicer in servicing the obligation.") In arguing to the contrary, plaintiffs rely on their insistence that Aurora could not have submitted a credit bid at the foreclosure sale unless it was the owner of the loan. Even assuming that Aurora was required to bid in cash absent full ownership of the loan, plaintiffs have failed to submit evidence to call into question the representation of the trustee's deed that Aurora *did* acquire the property with cash.

3. Interference

Plaintiffs allege that prior to the foreclosure, they were attempting to consummate a transaction whereby O'Brien would sell the property to Jacobsen, allowing O'Brien to pay off the loan in full. Plaintiffs contend that Aurora tortiously interfered with the economic relationship between them by failing to provide payoff information and refusing to postpone the foreclosure sale further.

While plaintiffs allege the existence of an actual contract between them, it is not entirely clear whether they are claiming interference with contract, or only interference with prospective economic advantage. The elements of a claim for intentional interference with contractual relations are "(1) **[*15]** a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pacific Gas and Electric Co. v. Bear Stearns & Co. 50 Cal.3d 1118, 1126, 270 Cal. Rptr. 1, 791 P.2d 587 (1990).* Where there is no existing contract, but only "prospective economic advantage," a plaintiff must also show that "the defendant's interference was wrongful by some measure beyond the fact of the interference itself." *Della Penna v. Toyota Motor Sales, U.S.A., Inc., 11 Cal.4th 376, 393, 45 Cal. Rptr. 2d 436, 902 P.2d 740 (1995).*

Regardless of which theory plaintiffs are pursuing, they have failed to show a triable issue of fact that Aurora committed any actionable act of "interference." Plaintiffs' opposition only mentions the claim in passing and offers neither facts nor legal analysis to support it. The evidence shows that plaintiffs were contemplating a possible "short sale," for which the lender's consent would be required. They have not shown that Aurora or the lender breached any duty in failing to provide such consent, or even that

they ever **[*16]** applied for it.

4. Bidding at the foreclosure sale

Finally, as noted above, plaintiffs contend that Jacobsen's cash bid of $500 should have been recognized as the winning bid at the auction. While plaintiffs assert that Jacobsen's declaration creates a triable issue of fact as to whether Aurora was allowed to make a credit bid, the declaration actually asserts only that he was told the "lender" was the highest bidder, not the form of the bid. Nor have plaintiffs made a showing that it would be improper for Aurora to make a credit bid in any event.

C. Disposition of motions

Because plaintiffs' contention that Direct Funding lacked legal capacity to contract is factually and legally unsound, their own motion for partial summary judgment must be denied. By the same token, Aurora and/or MERS are entitled to summary judgment in their favor on the claims for relief to the extent they are based on that theory. Because plaintiffs' arguments that Jacobsen was the winning bidder also fail, summary judgment must be granted (1) in favor of Aurora on the "Quiet Title" claim; (2) in favor of Aurora and MERS on the "Wrongful Foreclosure" claim, and; (3) in favor of Aurora on the "Cancellation of Instruments" **[*17]** claim. The claim against Aurora under a "common count" for "money mistakenly paid" also relies on plaintiffs' contention that the deed of trust was void, and summary judgment must be granted as to it.

Further, summary judgment is warranted on the TILA and "interference" claims against Aurora for the reasons set forth above. Accordingly, Aurora and MERS are entitled to summary judgment on all the claims alleged against them, and their motion will be granted in full.

Cal-Western, although not technically party to the summary judgment motion, cannot be liable under for wrongful foreclosure in light of the above findings. Additionally, the count for "breach of contract" alleged specifically against Cal-Western fails to state a claim, because plaintiffs have not alleged facts showing any contractual duties owed by Cal-Western to them. Accordingly, Cal-Western's motion to dismiss must also be granted, in full. In light of the disposition of the summary judgment motion, and Cal-Western's role as merely the party that conducted the foreclosure sale, it is

manifest that any amendment would be futile.

## IV. CONCLUSION

Aurora's motion to dismiss the original complaint is denied as moot. Plaintiffs' **[*18]** motion for partial summary judgment is denied. The motion of Aurora and MERS for summary judgment is granted. Cal-Western's motion to dismiss is granted, without leave to amend. A separate judgment will enter. The Case Management Conference set for August 23, 2012 is vacated.

IT IS SO ORDERED.

Dated: 8/8/12

/s/ Richard Seeborg

RICHARD SEEBORG

UNITED STATES DISTRICT JUDGE

# EXHIBIT B

**AKERMAN SENTERFITT LLP**
JUSTIN D. BALSER (SBN 213478)
Email: justin.balser@akerman.com
725 South Figueroa Street, 38th Floor
Los Angeles, California 90017-5433
Telephone: (213) 688-9500
Facsimile: (213) 627-6342

**AKERMAN SENTERFITT LLP**
JUSTIN D. BALSER (SBN 213478)
Email: justin.balser@akerman.com
VICTORIA E. EDWARDS (CA SBN 269305)
Email: victoria.edwards@akerman.com
1400 Wewatta Street, Suite 500
Denver, Colorado 80202
Telephone: (303) 260-7712
Facsimile: (303) 260-7714

Attorneys for Defendants
AURORA LOAN SERVICES LLC and
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA (SAN FRANCISCO)

| | |
|---|---|
| MICHAEL T. O'BRIEN, an individual and ROBERT E. JACOBSEN, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>AURORA LOAN SERVICES LLC, a Delaware Limited Liability Company; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation, CAL-WESTERN RECONVEYANCE CORPORATION, a California Corporation and DOES 1-10, inclusive.<br><br>Defendants. | Case No. CV 12-00135 RS<br>(The Hon. Judge Richard Seeborg)<br><br>**DEFENDANTS AURORA LOAN SERVICES LLC'S AND MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'S NOTICE OF CROSS-MOTION AND CROSS-MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br><u>Documents Filed Herewith:</u><br>1. Declaration of Victoria Edwards<br>2. Declaration of Kristen Trompisz<br><br><u>Hearing Date:</u><br>Date:   May 24, 2012<br>Time:  1:30 p.m.<br>Ctrm:  3<br><br>Second FAC Filed:  February 8, 2012<br>FAC Filed:            February 3, 2012<br>Complaint Filed:    December 1, 2011<br>Trial Date:            None |

**TO THE COURT AND ALL PARTIES AND THEIR COUNSEL OF RECORD:**

///

AKERMAN SENTERFITT LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**PLEASE TAKE NOTICE** that on May 24, 2012 at 1:30 p.m. or as soon thereafter as may be heard, in Courtroom 3 of the above-entitled Court located at the Phillip Burton Federal Building & United States Courthouse, 450 Golden Gate Avenue, San Francisco, California, defendants Aurora Loan Services LLC (**Aurora**) and Mortgage Electronic Registration Systems, Inc. (**MERS**) (collectively **defendants**) will and hereby do move this Court for summary judgment on plaintiffs Michael T. O'Brien's (**O'Brien**) and Robert E. Jacobsen's (**Jacobsen**) (collectively **plaintiffs**) claims against them.

This motion is made and based upon Rule 56 of the Federal Rules of Civil Procedure and the grounds that there are no genuine issues of material fact as to any claim against defendants and thus defendants are entitled to judgment as a matter of law. This motion is based upon this notice, the attached memorandum of points and authorities, and upon all papers and documents on file herein, the Court's files concerning this action, together with those facts and documents of which the parties request judicial notice and/or matters which judicial notice is proper, as well as any oral argument that may be presented at the time of the hearing.

Dated: April 19, 2012

**AKERMAN SENTERFITT LLP**

By: _Victoria E. Edwards_
Justin D. Balser
Victoria E. Edwards
Attorneys for Defendants
AURORA LOAN SERVICES LLC and
MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.

AKERMAN SENTERFITT LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................1

II.    STATEMENT OF FACTS .....................................................................................2

III.   ARGUMENT .........................................................................................................3

       A.     Standard of Review for Motions for Summary Judgment. .........................3

       B.     There Is No Triable, Genuine Dispute of Material Fact Concerning Any of Plaintiffs' Claims. ....................................................................................4

            1.     Aurora Did Not Violate the Truth in Lending Act. ........................5

            2.     Title Cannot be Quieted in Jacobsen's Favor. ..............................7

                 a.     Title in the Property Cannot Be Quieted by Plaintiffs Because O'Brien Ratified the Loan, Which Remained a Valid Lien on the Property at the Time of Foreclosure. ....................................................7

                 b.     Jacobsen Does Not Have a Valid Claim to Title. ............................8

                 c.     Aurora Has a Superior Claim to Title. ............................................11

            3.     The Foreclosure of the Property Was Proper. ............................12

            4.     Plaintiffs Are Not Entitled to the Cancellation of Any Instrument. ..........14

            5.     Aurora Did Not Interfere in Plaintiffs' Economic Relationship................15

            6.     Plaintiff is Not Entitled to Any Restitution for Monies Paid to Aurora. ...18

       C.     Plaintiffs' Claims are Barred by Res Judicata. .......................................19

            1.     There Are Identity of Claims. ......................................................19

            2.     There Was a Final Judgment on the Merits. ...............................20

            3.     There Is Privity Between the Parties............................................21

       D.     It Would Be Inequitable to Allow Title Be Quieted in Jacobsen's Favor. ............21

IV.   CONCLUSION ...................................................................................................22

AKERMAN SENTERFITT LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**TABLE OF AUTHORITIES**

**Cases**

*6 Angels, Inc. v. Stuart-Wright Mortg., Inc.*,
   85 Cal. App. 4th 1279, 1284 (2001) ........................................................... 13

*Alliance Mortgage Co. v. Rothwell*,
   10 Cal. 4th 1226, 1235 (1995) ................................................................... 9

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242, 248 (1986) ........................................................................... 4

*Arnolds Mgmt. Corp. v. Eischen*,
   158 Cal. App. 3d 575, 578–79 (1984) ......................................................... 21

*Bank of America Nat. Trust & Sav. Ass'n v. Reidy*,
   15 Cal. 2d 243, 248 (1940) ......................................................................... 13

*Brown v. Busch*,
   152 Cal. App. 2d 200, 204 (1957) ............................................................... 13

*Celotex Corp. v. Catrett*,
   477 U.S. 317, 323 (1986) ........................................................................... 4

*Cf. Prescott v. BNC Mort., Inc.*,
   No. C 09-00805 SBA, slip op. at 1 (N.D. Cal. Apr. 17, 2009) ...................... 22

*Che v. Aurora Loan Servs. LLC*,
   No. SACV 11-01458-CJC(RJNBx) ............................................................... 6

*Costantini v. Trans World Airlines*,
   681 F.2d 1199, 1201-02 (9th Cir. 1982) ..................................................... 19

*Delamater v. Anytime Fitness*,
   722 F. Supp. 2d 1168, 1174 (E.D. Cal. 2010) ............................................ 4

*Diaz v. Eagle Produce Ltd. P'ship*,
   521 F.3d 1201, 1207 (9th Cir. 2008) ......................................................... 4

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
   504 U.S. 451, 456 (1992) ........................................................................... 4

*Gerhard v. Stephens*,
   68 Cal. 2d 864, 918 (1968) ......................................................................... 7

*Gomes v. Countrywide Home Loans, Inc.*,
   192 Cal. App. 4th 1149, 121 Cal. Rptr. 3d 819 (2011) ............................... 12

*Handyman Connection of Sacramento v. Sands*,
   123 Cal. App. 4th 867, 888 (2004) ............................................................ 10

*Hatch v. Collins*,
   225 Cal. App. 3d 1104, 1113 (1990) ......................................................... 13

*Headwaters Inc. v. U.S. Forest Serv.*,
   399 F.3d 1047, 1052 (9th Cir. 2005) ......................................................... 19

AKERMAN SENTERFITT LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

*Horton v. Country Mortg. Servs., Inc.,*
No. 07 C 6530, 2010 WL 55902, at *3 (N.D. Ill. Jan. 4, 2010) ...................... 6

*Humboldt Sav. Bank v. McCleverty,*
161 Cal. 285, 290–91 (1911) ...................... 21

*In re Schimmels,*
127 F.3d 875, 884 (9th Cir. 1997) ...................... 20

*Johnson v. U.S. Dep't of Treasury,*
939 F.2d 820, 825 (9th Cir. 1991) ...................... 20

*Jump v. Aurora Loan Servs. LLC, et al.,*
No. 09 CV 189, 2009 WL 2020128, at *2 (S.D. Cal. July 10, 2009) ...................... 21

*Kelley v. Mortg. Elec. Registration Sys., Inc.,*
642 F. Supp. 2d 1048, 1057 (N.D. Cal. 2009) ...................... 8

*Knapp v. Doherty,*
123 Cal. App. 4th 76, 86 fn. 4 (2004) ...................... 13

*Marin v. Eidgahy*
No. 10 CV 1906 MMA (RBB), 2011 WL 2446384, at *9 (S.D. Cal. June 17, 2011) ...................... 16

*Marks v. Ocwen Loan Servicing,*
No. C 07-02133 SI, 2008 WL 344210, at *2 (N.D. Cal. 2008) ...................... 6

*Melendrez v. D & I Inv.,*
127 Cal. App. 4th 1238, 1258 (2005) ...................... 13

*Mendez-Carmona v. Saxon Mortgage, Inc.,*
No. G043420, 2011 WL 579205, at *5 (Cal. Ct. App. Feb. 18, 2011) ...................... 8

*Miller v. Glenn Miller Prod., Inc.*
454 F.3d 975, 987 (9th Cir. 2006) ...................... 4

*Moeller v. Lien,*
25 Cal. App. 4th 822, 834 (1994) ...................... 12

*Moreland v. Las Vegas Metro. Police Dep't,*
159 F.3d 365, 369 (9th Cir. 1998) ...................... 4

*Nat'l Bank of Cal. v. Miner,*
167 Cal. 532, 537 (1914) ...................... 18

*New Hampshire v. Maine,*
532 U.S. 742, 748 (2001) ...................... 19

*Nguyen v. Calhoun,*
105 Cal. App. 4th 428, 438 (2003) ...................... 8

*Owens v. Kaiser Found. Health Plan, Inc.,*
244 F.3d 708, 714 (9th Cir. 2001) ...................... 20

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.,*
50 Cal. 3d 1118, 1126 (1990) ...................... 15

AKERMAN SENTERFITT LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

*Parcray v. Shea Mortg. Inc.*,
    No. CV-F-09-1942 OWW/GSA, 2010 WL 1569369, at * 18 (E.D. Cal. 2010) .............................. 14

*Petrominerals Corp.*,
    128 Cal. App. 4th at 243 .............................. 17

*Pinkerton's, Inc. v. Superior Court*,
    49 Cal. App. 4th 1342, 1348 (1996) .............................. 10

*Reeves v. Hanlon*,
    33 Cal. 4th 1140, 1148 (2004) .............................. 15

*Richardson v. H.L. Bryant*,
    No. 1:99-cv-06575-OWW-GSA-PC, 2010 WL 2877499, at *2 (E.D. Cal. July 16, 2010) .............. 4

*San Francisco Unified School Dist.*,
    237 F.3d 1026, 1031 (9th Cir. 2001) .............................. 4

*Semtek Int'l, Inc. v. Lockheed Martin Corp.*,
    531 U.S. 497, 501-02 (2001) .............................. 20

*Shimpones v. Stickney*,
    219 Cal. 637, 649, 28 P.2d 673 (1934) .............................. 22

*Sole Energy Co. v. Petrominerals Corp.*,
    128 Cal. App. 4th 212, 243 (2005) .............................. 16

*Star Pac. Inv. v. Oro Hills Ranch, Inc.*,
    121 Cal. App. 3d 447, 457 (1981) .............................. 14

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*,
    322 F.3d 1064, 1077 (9th Cir. 2003) .............................. 19

*Taylor v. Sturgell*,
    553 U.S. 880, 892 (2008) .............................. 19

*U.S. Cold Storage of Cal. v. Great W. Sav. & Loan Ass'n*,
    165 Cal. App. 3d 1214, 1222 (1985) .............................. 22

*United States v. Shumway*,
    199 F.3d 1093, 1103–04 (9th Cir. 1999) .............................. 4

*Wal-Noon Corp. v. Hill*,
    45 Cal. App. 3d 605, 612 (1975) .............................. 18

*Williams v. Koenig*, 219 Cal. 656, 660 (1934) .............................. 21

*Winnett v. Roberts*,
    179 Cal. App. 3d 909, 922 (1986) .............................. 9

*Youst v. Longo*,
    43 Cal. 3d 64, 71 (1987) .............................. 16

**Statutes**

12 U.S.C. § 2605(i)(2) .............................. 5

AKERMAN SENTERFITT LLP

725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

15 U.S.C. § 1602(f) ............................................................................................ 5

15 U.S.C. § 1641(f)(1) ....................................................................................... 6

15 U.S.C. § 1641(g) ........................................................................................... 5

16 C.F.R. § 226.39(a) ........................................................................................ 5

16 C.F.R. § 226.39(c)(3) .................................................................................... 6

75 FR 58489-01, at *58490 ............................................................................... 5

Cal. Bus. & Prof. Code § 17915 ...................................................................... 10

Cal. Civ. Code §§ 2924–2924i ......................................................................... 12

Cal. Civ. Code § 1550 ........................................................................................ 9

Cal. Civ. Code § 2924h(b) ............................................................................... 12

Cal. Civ. Code § 3412 ...................................................................................... 14

Cal. Civ. Code §1473 ......................................................................................... 9

Cal. Civ. Proc. Code § 580d ............................................................................ 15

Cal. Com. Code § 1201(a)(21)(B) .................................................................... 18

Cal. Corp. Code § 202(a) .................................................................................. 10

AKERMAN SENTERFITT LLP

725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs Michael T. O'Brien (**O'Brien**) and Robert E. Jacobsen (**Jacobsen**) (collectively, **plaintiffs**) bring this action in a last-ditch attempt to have O'Brien's mortgage loan deemed void *ab initio* and quiet title in favor of Jacobsen, despite the fact neither has standing to bring this lawsuit. Both the law and the undisputed material facts support judgment in favor of defendants Aurora Loan Services LLC (**Aurora**) and Mortgage Electronic Registration Systems, Inc. (**MERS**) (collectively, **defendants**).

In sum, plaintiffs contend in their Second Amended Complaint (**SAC**)[1] Jacobsen is entitled to a mortgage-free property because O'Brien's mortgage lender allegedly was never licensed to do business in California when it originated O'Brien's $1,240,000 mortgage loan on the property in 2006. O'Brien does not claim to have been defrauded during the origination of the loan, nor does he state that he signed the loan documents under duress. Rather, O'Brien alleges, five years after the origination, after making four years of payments on the loan, and only after the foreclosure on the property, that the loan was void *ab initio* because O'Brien's mortgage broker and lender, Direct Funding, was never incorporated under the laws of California.

However, plaintiffs are not entitled to the requested relief because whether Direct Funding was licensed to do business in California in 2006 is, at best, a non-material disputed fact that is not established by plaintiffs' evidence, and more importantly would not entitle plaintiffs to either void the mortgage loan or to undo the foreclosure sale. But even if this fact was deemed material, it is not a "genuine" fact because the evidence provided by Aurora very clearly establishes that O'Brien's lender was indeed doing business in California at the time the Loan was originated in 2006. Plaintiffs are just plain wrong on the facts and the law.

Also, neither plaintiff has standing here to bring this lawsuit because it is barred by *res judicata*. Moreover, plaintiffs have not—and cannot—pay off O'Brien's debt, a prerequisite to setting aside a trustee's sale and regaining the right to possess. Whether O'Brien claims the loan is now void, he does not dispute he borrowed $1.24 million against the property—that is still money

---

[1] Plaintiffs filed two "First Amended Complaints." For ease of reference, defendants refer to the Second First Amended Complaint, Docket No. 12, as the "Second Amended Complaint" or "SAC."

AKERMAN SENTERFITT LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

1  owed on the transaction. O'Brien's debt does not magically disappear and neither O'Brien nor

2  Jacobsen get title to a free and clear house because they now believe Direct Funding did not exist,

3  despite O'Brien's willingness to take $1.24 million from the "non-entity." He must pay this money

4  back if he seeks to equitably rescind the loan and undo the foreclosure sale.

5  For these reasons, as well as those set forth below, defendants' Cross-Motion for Summary

6  Judgment must be granted. There is simply no triable, genuine issue of material fact. The material

7  facts of this case are established by defendants and undisputed by plaintiffs' "evidence," and the law

8  could only find in defendants' favor.

9  ## II.  STATEMENT OF FACTS

10  O'Brien and ex-wife Jill Wagner-O'Brien (**Jill O'Brien**) (collectively, the **O'Briens**) obtained

11  title to property located at 1040 Pine Lane, Lafayette, California (the **Property**) through a quit-claim

12  deed executed in 1994. (SAC Ex. A.) On November 21, 2006, the O'Briens obtained a refinance

13  loan in the amount of $1,240,000 (the **Loan**) from Bush & Hewitt Holding, Inc. dba Direct Funding

14  (**Direct Funding**). (Declaration of Kristen Trompisz (**Trompisz Decl.**) Ex. 2.) This Loan was

15  secured by a deed of trust on the Property, which was recorded with the Contra Costa County

16  Recorder's Office at entry number 2006-0384801-00 (the **Deed of Trust**). (*Id.* Ex. 3.) The Deed of

17  Trust identifies MERS as the beneficiary, Fidelity National Title (**Fidelity**) as trustee, and Direct

18  Funding as the lender. (*Id.*) GreenPoint Mortgage Funding, Inc. began servicing O'Brien's Loan

19  immediately after its origination. (*Id.* Ex. 8.)

20  Effective March 1, 2007, Aurora began servicing the Loan. (*Id.* Ex. 1.) The O'Briens made

21  minimum payments of $3,875.00 to Aurora regularly until October 16, 2009, when the O'Briens

22  made their first late payment. (*Id.* Ex. 5, at 4.) Thereafter, the O'Briens began making erratic

23  payments, sometimes a month or two apart. (*Id.* at 3–4.) These erratic payments continued until

24  November 29, 2010, when the O'Briens stopped making payments under the Loan altogether. (*Id.* at

25  2.)

26  Following the O'Briens' default, MERS assigned its beneficial interest in the Loan to Aurora.

27  (*Id.* Ex. 4.) In March 2011, Cal-Western Reconveyance Corporation (**Cal-Western**)–in its capacity

28  as agent for the beneficiary–recorded a Notice of Default against the Property. (SAC Ex. J.) That

AKERMAN SENTERFITT LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

same day, Aurora executed a Substitution of Trustee, thereby substituting Cal-Western as trustee under the Deed of Trust. (SAC Ex. P.) It was recorded less than a month later. (*Id.*) In July 2011, the O'Briens executed a grant deed transferring interest in the Property to O'Brien alone. (SAC Ex. B.) The Trustee's Sale was originally scheduled for July 21, 2011. (SAC Ex. L.) After being postponed, the Property was scheduled to be sold at trustee's sale on September 13, 2011. On September 12, 2011, O'Brien deeded his interest in the Property to Jacobsen pursuant to a grant deed, which noted his interest was "FULLY ENCUMBERED (sic)." (Declaration of Robert Jacobsen in Support of Motion for Partial Summary Judgment, Docket No. 13-1, (**Jacobsen Decl.**) Ex. A.) The Property was sold at trustee's sale on September 13, 2011, where Aurora made the highest bid of $1,513,815.43 in cash. (Trompisz Decl. Ex. 7.)

Jacobsen filed suit in Contra Costa County Superior Court on September 7, 2011 (the **State Action**). (Declaration of Victoria Edwards (**Edwards Decl.**) Ex. 1.) Defendants demurred to Jacobsen's causes of action, and that demurrer was sustained without leave to amend.[2] (*Id.* Ex. 2.) While that action was pending, Jacobsen brought a small claims suit in Contra Costa County. (*Id.* Ex. 3.) That action was removed to federal court, but Jacobsen later voluntarily dismissed that action. (*Id.* Ex. 4.) While both actions were pending, Jacobsen then brought a second small claims suit, the present action. (*See* Notice of Removal to Federal Court, Docket No. 1, Ex. 1.) The present action was removed to federal court in January of this year. (*See id.*)

## III.   ARGUMENT

### A.   Standard of Review for Motions for Summary Judgment.

Summary judgment shall be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Summary judgment is inappropriate if a reasonable finder of fact, drawing all inferences in favor of the non-moving party, could return a verdict in the non-moving

---

[2] Defendants acknowledge that Jacobsen did move to voluntarily dismiss the State Court action, however, his "Request for Voluntary Dismissal" was filed after the Court dismissed the case, and voluntary dismissal was never entered in the action against Aurora and MERS. (Ex. 22.)

AKERMAN SENTERFITT LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

party's favor. *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).

The moving party bears the initial burden of establishing there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). Once the moving party meets its burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. "[T]he substantive law will identify which facts are material" for purposes of denying or granting a summary judgment motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*; *see Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998). A dispute over a material fact is "genuine" only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Moreland*, 159 F.3d at 369.

The parties bear the burden of supporting their motions and oppositions with the appropriate documents and references to the record, as the court "will not undertake to mine the record for triable issues of fact." *See Richardson v. H.L. Bryant*, No. 1:99-cv-06575-OWW-GSA-PC, 2010 WL 2877499, at *2 (E.D. Cal. July 16, 2010) (citing *San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001)); *Delamater v. Anytime Fitness*, 722 F. Supp. 2d 1168, 1174 (E.D. Cal. 2010) ("[I]nferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn."). The Court should not make credibility determinations, nor should it weigh conflicting evidence. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992).

**B.      There Is No Triable, Genuine Dispute of Material Fact Concerning Any of Plaintiffs' Claims.**

Defendants are entitled to judgment under both the law and the facts. None of plaintiffs' contentions or evidence support any of their claims for relief. To the contrary, both the law and the evidence as presented by Aurora establish the validity of the Loan and the foreclosure on the Property.

AKERMAN SENTERFITT LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

AKERMAN SENTERFITT LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

## 1.   Aurora Did Not Violate the Truth in Lending Act.

Plaintiffs' first cause of action alleges Aurora violated the Truth in Lending Act (**TILA**) by failing to give notice that MERS transferred its beneficial interest under the Deed of Trust to Aurora. (SAC ¶¶ 58-59.)  However, Aurora cannot be liable for any violation of TILA because it was never the owner of O'Brien's Loan, and only received the MERS assignment for purposes of servicing O'Brien's Loan.

Although not specifically stated, plaintiffs appear to allege Aurora violated the provision of TILA which provides, "[N]ot later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, **the creditor that is the new owner or assignee of the debt** shall notify the borrower in writing of such transfer . . . ."  15 U.S.C. § 1641(g) (emphasis added).  Under TILA, "the term creditor refers to those who regularly extend credit and to whom the debt arising from the credit is initially payable."  *Id.* at 4 (citing 15 U.S.C. § 1602(f)).

Pursuant to § 226.39 of Regulation Z, which specifically implements § 1641(g), the disclosure requirements apply only to a "covered person" that "becomes the **owner** of an existing mortgage loan by acquiring legal title to the debt obligation, whether through a purchase, assignment or other transfer, and who acquires more than one mortgage loan in any twelve-month period."  16 C.F.R. § 226.39(a); *see also* 75 FR 58489-01, at *58490 ("A person is covered by the rule if it acquires legal title to the debt obligation.") (emphasis added).

The definition of covered person under Section 226.39 *specifically excludes* loan servicers— i.e., "the person responsible for servicing" a loan, 12 U.S.C. § 2605(i)(2))—from liability if it merely services the loan and does not also own the loan:

> For purposes of this section, a servicer of a mortgage loan shall not be treated as the owner of the obligation if the servicer holds title to the loan, or title is assigned to the servicer, solely for the administrative convenience of the servicer in servicing the obligation.

16 C.F.R. § 226.39(a)(1) (January 1, 2011).

As a preliminary matter, Aurora is not subject to liability under TILA because it is not a "covered person" under the statute.  It was never O'Brien's creditor as that term is defined under TILA, and never owned O'Brien's Loan.  (Trompisz Decl. ¶¶ 14-15.)  At all relevant times to this

action, O'Brien's Loan was owned by U.S. Bank as trustee for GreenPoint Mortgage Funding Trust, Series 2007-AR1 (the **Trust**). (Trompisz Decl. ¶ 15; *See* SAC Exs. D, F.)  Aurora, and later Aurora Bank FSB, have always only serviced the Loan on behalf of the Trust and U.S. Bank, N.A., in its capacity as trustee for the Trust.  (Trompisz Decl. ¶¶ 14-15; *See* SAC Exs. D, F.)  Section 1641(g) cannot be applied to Aurora in this circumstance, because "TILA expressly disclaims any liability for mere servicers 'unless the servicer is or was the owner of the obligation,'" *Horton v. Country Mortg. Servs., Inc.*, No. 07 C 6530, 2010 WL 55902, at *3 (N.D. Ill. Jan. 4, 2010) (quoting 15 U.S.C. § 1641(f)(1)).

To the extent plaintiffs have alleged Aurora *became* the owner of the Loan when it obtained an assignment of the Deed of Trust and underlying promissory note, such a contention is inaccurate as a matter of law.  Neither the assignment of the Deed of Trust nor Aurora's possession of the original note, alone, could serve to convert Aurora into O'Brien's creditor because Aurora obtained these interests in the Loan *solely* for administrative convenience.  (Trompisz Decl. ¶ 14.)  *See, e.g., Che v. Aurora Loan Servs. LLC*, No. SACV 11-01458-CJC(RJNBx), 2012 WL 899629, at *3 (C.D. Cal. Mar. 15, 2012) (citing *Marks v. Ocwen Loan Servicing*, No. C 07-02133 SI, 2008 WL 344210, at *2 (N.D. Cal. 2008)).  Aurora obtained an interest in the note and Deed of Trust in order to properly perform its servicing obligations, including enforcing the debt by foreclosure.  This act alone did not make Aurora the owner or creditor of the Loan.  *See Che*, 2012 WL 899629, at *3.

At best, the assignment only serves to give Aurora a **partial** interest in the Loan, as acknowledged by plaintiffs.  (SAC ¶ 58 ("MERS purported to assign the beneficial interest in the deed of trust.").)  This partial interest did not change Aurora's role as servicer of O'Brien's Loan.  "[A] covered person is not subject to the requirements of [Section 226.39 of Regulation Z] with respect to a particular mortgage loan if . . . [t]he covered  person acquires only a ***partial interest*** in the loan and the party authorized to receive the consumer's notice of the right to rescind and resolve issues concerning the consumer's payments on the loan does not change as a result of the transfer of the partial interest."  16 C.F.R. § 226.39(c)(3) (emphasis added).  Thus, "[t]he final rule...***does not apply to persons who acquire only a beneficial interest*** or a security interest in the loan...."  75 FR 58489-01, at *58492 (emphasis added).  Aurora at all times relevant acted as the servicer of O'Brien's

AKERMAN SENTERFITT LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

Loan, and the party authorized to receive O'Brien's notice of the right to rescind and resolve issues concerning his payments on the Loan—i.e., Aurora—did not change as a result of the transfer of the partial interest.

The evidence makes clear that Aurora cannot be liable for failing to notify O'Brien of the beneficial interest it received from the Assignment, as it did not act to transfer ownership of the debt to Aurora. *See, e.g., Che*, 2012 WL 899629, at *3. Therefore, defendants request the Court grant summary judgment in their favor.

**2.     Title Cannot be Quieted in Jacobsen's Favor.**

**a.     Title in the Property Cannot Be Quieted by Plaintiffs Because O'Brien Ratified the Loan, Which Remained a Valid Lien on the Property at the Time of Foreclosure.**

Plaintiffs next request that title to the Property be quieted in favor of Jacobsen because at the time O'Brien signed the note and Deed of Trust, plaintiffs believe O'Brien's lender was not incorporated to do business in California. However, this allegation is not only completely unsupported by the evidence as established further below, but also immaterial because O'Brien has not and cannot establish by the evidence that his interest in the Property was superior to Aurora's. A "plaintiff can prevail [on a quiet title claim] only by the establishment of his own title and not by reliance upon a weakness in defendant's title." *Gerhard v. Stephens*, 68 Cal. 2d 864, 918 (1968). In other words, it is not enough to allege that a defendant's title is inadequate, but rather a plaintiff must clearly show that he holds title **superior** to that of a defendant. *Id.*

Regardless of whether O'Brien now believes, 6 years after the fact, that his lender did not have authority to make the Loan in California, the fact remains that O'Brien ratified the Loan by not only accepting the $1.24 million benefit of the contract but by operating under it for five years before failing to meet his obligations, which resulted in foreclosure on the Property. (Trompisz Decl. Exs. 5, 10.)

Under similar circumstances, the California Court of Appeals found that an equitable lien was created when borrowers ratified a forged refinance loan after receiving nearly $500,000 in proceeds, and used the proceeds to pay off the balance of their original mortgage, property taxes, credit card

AKERMAN SENTERFITT LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

obligations, and insurance premiums. *See Mendez-Carmona v. Saxon Mortgage, Inc.*, No. G043420, 2011 WL 579205, at *5 (Cal. Ct. App. Feb. 18, 2011) (unpublished) (Edwards Decl. Ex. 12). The Court found that the equitable lien was created using the same terms in the forged deed of trust and that a party given a subsequent interest in the deed of trust was entitled to enforce it. *Id.* The Court reasoned that this was only fair because the lender paid out substantial sums of money with respect to the property and that the borrowers were able to keep the benefits of the fraudulent loan. *Id.*

Here, O'Brien not only received $286,110.37 in cash-out proceeds, but he used the remaining money to pay two prior mortgages on the Property and the first half of his taxes for the year. (Trompisz Decl. Ex. 10.) As a result, O'Brien has ratified the Loan, thereby giving Direct Funding an enforceable equitable lien on the Property that was properly transferred to Aurora. Aurora subsequently foreclosed on such equitable lien following O'Brien's non-payment.

Simply put, the Loan properly remained secured by the Property at the time of foreclosure, so plaintiffs cannot legally quiet title therein. "In order to maintain a claim for quiet title, [p]laintiffs must show that 'they are the rightful owners of the property, *i.e.* that they have satisfied their obligations under the Deed of Trust.'" *Kelley v. Mortg. Elec. Registration Sys., Inc.*, 642 F. Supp. 2d 1048, 1057 (N.D. Cal. 2009). O'Brien has not established that he or Jacobsen paid the Loan in full prior to foreclosure. Thus the Deed of Trust constituted a valid lien on the Property, and as a result plaintiffs are not entitled to have title quieted in Jacobsen's favor.

### b. Jacobsen Does Not Have a Valid Claim to Title.

Jacobsen, too, is prevented from quieting title because he expressly took any purported interest in the Property subject to the Loan. Jacobsen's claim to title is derived from the grant deed he received from O'Brien in September 2011. (SAC ¶ 65.) This Grant Deed expressly purports to transfer a "fully encumbered" interest in the Property from O'Brien to Jacobsen for no consideration. (Jacobsen Decl. Ex. A.) Plaintiffs appear to recognize that if the Deed of Trust were valid, Jacobsen would have taken his interest in the Property subject to this lien. A loan for real property involves a promissory note and a security instrument, such as a deed of trust. *Nguyen v. Calhoun*, 105 Cal. App. 4th 428, 438 (2003) (citations omitted). Here, the Deed of Trust operated to secure O'Brien's

AKERMAN SENTERFITT LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

promissory note, by allowing O'Brien's lender, or its successors and assigns (here, Aurora) to reach the Property in the event the promissory note was not paid. *Id.*

So while O'Brien was arguably free to transfer his interest in the Property, this transfer alone did not eliminate the existence of the Deed of Trust encumbering the Property. *Id.* A grantee, especially one like Jacobsen that takes for no consideration, takes title to the property **subject to all deeds of trust** and other encumbrances, whether or not the deed so provides. *Id.* This meant the beneficiary of the Deed of Trust, here Aurora, was permitted to sell the Property at a trustee's sale when O'Brien defaulted and failed to pay off the Loan, even though O'Brien may have arguably relinquished his rights in the Property to Jacobsen. *Id.* at 439.

Plaintiffs contend O'Brien's Loan was void *ab initio* because his lender was not registered to do business in California when the Loan was originated in 2006. (SAC ¶ 33.) However, this fact alone, even if accurate, could not serve as a basis to extinguish the Loan. A deed of trust is only extinguished by either proper tender of the underlying obligation, or sale of the property in an amount satisfying the lien. *Id.* (citing CAL. CIV. CODE §1473; *Alliance Mortgage Co. v. Rothwell*, 10 Cal. 4th 1226, 1235 (1995); *Winnett v. Roberts*, 179 Cal. App. 3d 909, 922 (1986)). The sale of the Property here did extinguish the Deed of Trust, but in Aurora's favor, not Jacobsen's.

It is noteworthy that O'Brien does not allege that the Loan was invalid in any other respect. In order for a valid contract to exist, there must be (1) parties capable of contracting; (2) consent to the contract; (3) a lawful object; and (4) sufficient consideration. CAL. CIV. CODE § 1550. Here, plaintiffs do not dispute that O'Brien voluntarily entered into the contracts at issue, that the object of the contracts were lawful (i.e., a mortgage loan), or that there was sufficient consideration exchanged. Instead, plaintiffs allege that Direct Funding was not capable of contracting because of its corporate existence. This is simply not enough to void the Loan.

The evidence establishes that the sole premise of plaintiffs' quiet title claim, i.e., that the Deed of Trust was void because Direct Funding was not incorporated in California at the time O'Brien obtained the loan and thus lacked the capacity to enter into the Deed of Trust, is plain wrong. Plaintiffs support their theory with a signed affidavit from Jana Castro, a Deputy California Secretary of State. (SAC Ex. N.) This affidavit states, in pertinent part that Ms. Castro was unable to find any

AKERMAN SENTERFITT LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

records responsive to the request for, "Any and all documents pertaining to Direct Funding, not Direct Funding Inc or Direct Funding Corporation or Direct Funding LTD." (*Id.* at 2, 7.)

However, Ms. Castro's affidavit is not probative on the issue of whether an entity doing business as "Direct Funding" existed in the state of California at the time the O'Briens obtained the Loan. As an initial matter, the affidavit states only that no entity named "Direct Funding" has been incorporated in California. It is unlikely that one with the specific name of "Direct Funding" could be, because all businesses incorporated in the California are ***required*** to have a corporate ending, such as "Corporation," "Incorporated," "Company," or abbreviated versions of those endings. *See* CAL. CORP. CODE § 202(a). But a company so incorporated ***is*** permitted to file a "Fictitious Name Statement" (**Statement**) with the county in which the principal place of business was located. CAL. BUS. & PROF. CODE § 17915. Upon filing a Statement, no separate entity is created and the company (or person) is then then permitted to transact business and enter into contracts under the fictitious name. *See id.* § 17918; *Pinkerton's, Inc. v. Superior Court*, 49 Cal. App. 4th 1342, 1348 (1996) (finding that a "dba" is indistinguishable from the person or corporation doing business under that name); *Handyman Connection of Sacramento v. Sands*, 123 Cal. App. 4th 867, 888 (2004). There is no requirement that a company doing business under a fictitious name also list their incorporated name. *See* § 17900–30.

The Deed of Trust indicates that "Direct Funding" was located at 41769 Enterprise Circle North, Suite 108, Temecula, California 92590. (Trompisz Decl. Ex. 3, at 1.) Temecula, California is located in Riverside County, California. A search of Fictitious Name Statements filed with the Riverside Clerk-Recorder (which are public records available to the public) shows that in November 2006, ***three*** Statements were active for "Direct Funding," all of which were tied to the Enterprise Circle address on the Deed of Trust. (Edwards Decl. Exs. 5-7.) Each of these Statements point to Bush & Hewitt Holding, Inc.[3] as the company incorporated in the State of California and doing business under "Direct Funding." (*Id.*) Bush & Hewitt Holding, Inc. was incorporated in 2002 with the California Secretary of State and was dissolved in 2009. (Edwards Decl. Exs. 10-11.)

---

[3] One of the Statements lists the name as "Bush & Hewitt Holdings, Inc." (Edwards Decl. Ex. 5.) However, this error is of little import given that the two more recent Statements have the exact corporate name listed. (*See id.* Exs. 6–7.)

AKERMAN SENTERFITT LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

Plaintiffs cannot hide behind their failure to investigate Direct Funding's corporate status. While plaintiffs may not have gone to the Riverside County Clerk-Recorder to investigate, plaintiffs are put on record notice of all documents recorded in the public records, as they are accessible at any time to any person. Indeed, plaintiffs' failure to conduct some minimum due diligence and review the public records before filing this lawsuit and their motion for partial summary judgment brings into question whether plaintiffs or their attorney have met their Rule 11 obligations. Plaintiffs' evidence simply does not and cannot serve to support their concocted theory.

Further research of public records reveals that Bush & Hewitt Holding, Inc. dba Direct Funding was also licensed with the California Department of Corporations as a residential mortgage lender and the State of California Department of Real Estate until 2008. (Edwards Decl. Ex. 8.) Direct Funding was both O'Brien's mortgage broker and lender under the Deed of Trust. (*See* Trompisz Decl. Exs. 9-10.) Had O'Brien done his due diligence and reviewed the paperwork he received at the time of closing before bringing this action, he would have discovered Direct Funding's mortgage broker license number, which would have directed him to all of this information. (*See* Trompisz Decl. Ex. 9.) Once again, this information is publicly available through the California Department of Corporations and available for anyone to obtain. That O'Brien failed to do so is irrelevant to whether Direct Funding was licensed to do business.

As is clear from the evidence, Direct Funding was not only fully authorized to do business in California, but was further a licensed residential mortgage lender at the time the O'Briens executed the Deed of Trust. Given that Direct Funding was authorized to do business in the State of California, the Deed of Trust constituted a valid encumbrance on the Property as of the date Jacobsen allegedly obtained his interest. *See Nguyen*, 105 Cal. App. 4th at 439. As a result, Jacobsen's interest in the Property was extinguished at the Trustee's Sale, requiring judgment in favor of defendants on plaintiffs' quiet title claim. *Id.*

### c. Aurora Has a Superior Claim to Title.

More importantly, plaintiffs have failed to produce evidence to show that Aurora's claim to title is inferior to Jacobsen's. In fact, the undisputed facts show Aurora's claim is superior. Aurora obtained valid title to the Property when it placed the highest cash bid at the trustee's sale. (Trompisz

AKERMAN SENTERFITT LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

AKERMAN SENTERFITT LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

Decl. Ex. 7.) MERS validly transferred its beneficial interest in the Deed of Trust to Aurora through the Corporate Assignment. (*Id.* Ex. 4.) *See also Gomes v. Countrywide Home Loans, Inc.*, 192 Cal. App. 4th 1149, 121 Cal. Rptr. 3d 819 (2011) (upholding MERS's right to assign its beneficial interest). There is no dispute that O'Brien was in default on the property, thereby making foreclosure appropriate. (*Id.* Ex. 5.) Aurora was the proper party to initiate the foreclosure proceedings, and then bid at the sale under CAL. CIV. CODE § 2924h(b). As a result, Aurora has superior title and Jacobsen's claim to title must cannot be sustained.

### 3. The Foreclosure of the Property Was Proper.

Plaintiffs' third cause of action challenges the foreclosure of the Property. Specifically, plaintiffs argue the foreclosure was wrongful because the Deed of Trust was void and Direct Funding was not licensed to do business. (SAC ¶¶ 72-86.) However, given that Direct Funding was fully licensed to do business in the State of California, plaintiffs' cause of action for wrongful foreclosure must be dismissed.

As noted above, Bush & Hewitt Holding, Inc. was licensed to do business in the State of California in November 2006 when the O'Briens obtained their Loan. *See supra* § III(B)(2)(b). Because Bush & Hewitt Holding, Inc. properly recorded a Fictitious Name Statement with the Riverside County Clerk-Recorder, it was permitted to do business as Direct Funding in the State of California. *Id.* Therefore, the Deed of Trust was valid and all of plaintiffs' arguments that Direct Funding was a "non-entity" or "non-lender" cannot support a claim for wrongful foreclosure.

More importantly, however, is the fact that California's non-judicial foreclosure process was properly followed here, so plaintiffs could have no basis in fact or law to undo the foreclosure. The legal framework governing non-judicial foreclosures, or trustee's sales, is found in CAL. CIV. CODE §§ 2924–2924i, which is "the comprehensive statutory framework established to govern non-judicial foreclosure sales" and "is intended to be exhaustive." *Moeller v. Lien*, 25 Cal. App. 4th 822, 834 (1994). That statutory scheme specifically provides that the foreclosure process may be conducted by the "trustee, mortgagee or beneficiary or any of their authorized agents," § 2924a(1). A person authorized to record the notice of default or the notice of sale includes "an agent for the mortgagee or

AKERMAN SENTERFITT LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

beneficiary, an agent of the named trustee, any person designated in an executed substitution of trustee, or an agent of that substituted trustee." § 2924a(4).

There was nothing suspect about the foreclosure of the Property. O'Brien obtained a $1.24 million Loan to refinance his Property in November 2006. (Trompisz Decl. Exs. 2-3.) As noted above, O'Brien made his payments steadily until 2008, when his payment history became spotty. (*Id.* Ex. 5.) He stopped making payments altogether by October 2010, which entitled the lender to initiate foreclosure on the Property. (*Id.*) On April 19, 2011, MERS assigned its beneficial interest in the Deed of Trust to Aurora, which substituted Cal-Western as the trustee under the Deed of Trust. (*Id.* Ex. 4.) On May 2, 2011, Cal-Western, acting "as agent for the trustee or beneficiary," caused to be recorded a notice of default. (SAC Ex. J.) On August 3, 2011, a notice of trustee's sale was recorded, setting a sale date of August 23, 2011. (SAC Ex. L.) Aurora ultimately purchased the Property at a trustee's sale held on December 27, 2011. (Trompisz Decl. Ex. 7.) There was nothing improper about this process—in fact, it is entirely in compliance with California's non-judicial foreclosure statutes, and plaintiffs fail to establish otherwise.

Nor can plaintiffs overcome the presumption of a valid foreclosure. "A nonjudicial foreclosure sale is accompanied by a common law presumption that it 'was conducted regularly and fairly.'" *Melendrez v. D & I Inv.*, 127 Cal. App. 4th 1238, 1258 (2005) (quoting *Brown v. Busch*, 152 Cal. App. 2d 200, 204 (1957)); *see also Knapp v. Doherty*, 123 Cal. App. 4th 76, 86 fn. 4 (2004). "It is the general rule that courts have power to vacate a foreclosure sale where there has been fraud in the procurement of the foreclosure decree or where the sale has been improperly, unfairly or unlawfully conducted, or is tainted by fraud, or where there has been such a mistake that to allow it to stand would be inequitable to purchaser and parties." *Bank of America Nat. Trust & Sav. Ass'n v. Reidy*, 15 Cal. 2d 243, 248 (1940).

The presumption can only be rebutted by ***substantial evidence of prejudicial procedural irregularity***. *6 Angels, Inc. v. Stuart-Wright Mortg., Inc.*, 85 Cal. App. 4th 1279, 1284 (2001). It is the burden of the party challenging the trustee's sale to prove such irregularity and thereby overcome the presumption of the sale's regularity. *Hatch v. Collins*, 225 Cal. App. 3d 1104, 1113 (1990); *see also Knapp*, 123 Cal. App. 4th 76, 86 n.4 (citing MILLER & STARR, CALIFORNIA REAL ESTATE

AKERMAN SENTERFITT LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

§ 10:211 at 679 (3d ed. 2000)).  If the trustee's deed contains a recital that all default and sale notices have been given, the notice requirements are statutorily presumed to have been satisfied.  *See* § 2924(c).

In this case, the trustee's deed upon sale recites the statutorily required language under § 2924(c).  (*See* Trompisz Decl. Ex. 7.)  Plaintiffs have raised no allegations of fraud or any irregularity that would cast any doubt on the foreclosure, other than their false allegations that Direct Funding was a "non-entity" not entitled to do business in California in 2006.  As a result, plaintiffs' third cause of action fails on the law and facts, entitling defendants to summary judgment in their favor.

### 4.    Plaintiffs Are Not Entitled to the Cancellation of Any Instrument.

In their fourth cause of action, plaintiffs request the Court cancel the "void documents in the chain of title." (SAC ¶¶ 89.)  Although plaintiffs do not specify which documents they believe should be cancelled, it is reasonable to believe they ask this Court to cancel the Deed of Trust, Corporate Assignment, Substitution of Trustee, Notice of Default, Notice of Trustee's Sale, and/or Trustee's Deed Upon Sale on the faulty allegation that Direct Funding did not exist at the time O'Brien received his $1.4 million loan.  (*See* SAC.)  However, neither the law nor the evidence established by defendants entitle plaintiffs to have any of these recorded instruments cancelled.

Cal. Civ. Code § 3412 provides that a written instrument may be cancelled when (1) it is void or voidable and (2) if not cancelled, the plaintiff will suffer serious injury.  *Id.*  However, before a plaintiff can cancel an instrument, "Plaintiff must restore to the beneficiary the amounts she borrowed pursuant to the promissory note and Deed of Trust."  *See Parcray v. Shea Mortg. Inc.*, No. CV-F-09-1942 OWW/GSA, 2010 WL 1569369, at * 18 (E.D. Cal. 2010) (quoting *Star Pac. Inv. v. Oro Hills Ranch, Inc.*, 121 Cal. App. 3d 447, 457 (1981)).

As a preliminary matter, neither plaintiff has made any offer to tender the amount due.  Instead, plaintiffs have the audacity to suggest that *O'Brien* is entitled to restitution of any money paid to Aurora, despite the fact that he received a $1.4 million-dollar Loan.  As stated further below tender is needed in order to obtain the equitable relief requested by plaintiffs.

AKERMAN SENTERFITT LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

Moreover, plaintiffs have neither established that (1) any instrument is void or voidable or that (2) if any of the instruments are not cancelled, either plaintiff will suffer serious injury. As noted more extensively above, the Deed of Trust is not void both because Direct Funding had capacity to contract and, second, because O'Brien ratified the contract by both accepting the money from the Loan and by making payments under its terms for five years. *Supra* § III(B)(2). Plaintiffs have not alleged that anything was improper or could serve to void any of the other instruments, save for this single contention that all subsequent documents were void because the Deed of Trust was void. (*See* SAC ¶¶ 88-95.) This is simply not sufficient, given that the Deed of Trust is not void.

Second, plaintiffs will not suffer any serious injury if the instruments are not cancelled. The Property has already been sold and O'Brien is no longer subject to any liability under the promissory note or Deed of Trust and therefore is not subject to any liability for the money he has failed to pay under the promissory note. *See* CAL. CIV. PROC. CODE § 580d; *Parcray*, 2010 WL 1659369, at * 18. To the extent plaintiffs argue they are injured because, "A title company will not insure title to the property due to those void documents" (SAC ¶ 91), such damages cannot serve to sustain this cause of action because neither plaintiff is entitled to ownership of the Property. As a result, this cause of action must be dismissed.

### 5. Aurora Did Not Interfere in Plaintiffs' Economic Relationship

Plaintiffs allege that Aurora tortiously interfered with the business relationship between O'Brien and Jacobsen by failing to postpone the trustee's sale so that Jacobsen could purchase the property. (SAC ¶ 104.) However, plaintiffs' claim for "economic interference" must be dismissed because no valid contract existed between plaintiffs, and they have failed to show Aurora acted with any intent.

The elements of intentional interference with contractual relations are: (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damages. *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1148 (2004) (citing *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990)).

AKERMAN SENTERFITT LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

"To satisfy the first element, there must be an existing relationship between the plaintiff and the third party, such that the plaintiff could reasonably anticipate an identifiable economic benefit from the relationship." *Marin v. Eidgahy* No. 10 CV 1906 MMA (RBB), 2011 WL 2446384, at *9 (S.D. Cal. June 17, 2011). The relationship must be based on "more than pure speculation or plaintiff's subjective intent to pursue a particular course of action." *Sole Energy Co. v. Petrominerals Corp.*, 128 Cal. App. 4th 212, 243 (2005). This is because the tort is designed to protect "the expectation the relationship will produce the desired benefit, not 'the more speculative expectation that a potentially beneficial relationship will arise.'" *Id.* (cited authority omitted). "[A]s a matter of law, a threshold causation requirement exists for maintaining a cause of action for [this] tort, namely, proof that it is reasonably probable that the lost economic advantage would have been realized but for the defendant's interference." *Youst v. Longo*, 43 Cal. 3d 64, 71 (1987) (emphasis in original).

Here, it is clear that Jacobsen's expectation that his relationship with O'Brien would result in the sale of their property to him is speculative at best. While plaintiffs produce some type of sales contract that he entered into with the O'Briens (SAC Ex. C), that contract could not provide Jacobsen any realistic expectation that O'Brien's lender would agree to sell him the property in a short sale. This was not a regular purchase of a property, but rather a purchase under which the lender would have to compromise its rights to receive full payment under the loan. Thus, express consent of the lender would clearly be needed before Jacobsen could have any realistic expectation of purchasing the property in a short sale.

This is evident by the short sale addendum attached to the purchase contract. (*See id.* at 11-12.) This contract states in clear terms that the Residential Purchase Agreement was "contingent upon . . . written consent to the Agreement from all existing secured lenders and lienholders." (*Id.* at 11 ¶ 1(a).) The short sale addendum also reminded both Jacobsen and O'Brien that Aurora was under absolutely no obligation to approve the Residential Purchase Agreement. (*Id.* at 12 ¶ 4.) Thus, any contract merely between the O'Brien and Jacobsen, without Aurora's approval, could provide absolutely no guarantee or reasonable expectation to either plaintiff that Jacobsen would receive the economic advantages of that agreement. O'Brien had no independent ability to sell the property,

absent approval of the lender.  This was a fact that the parties were well-aware of when they signed the sales agreement.

In reality, there was no ongoing business relationship between O'Brien and Jacobsen.  Their relationship was based on nothing more than (1) "pure speculation" that O'Brien's lender would approve the short sale, and (2) "plaintiff's subjective intent to pursue a particular course of action," i.e., the completion of a short sale.  *Petrominerals Corp.*, 128 Cal. App. 4th at 243.  This is not sufficient for purposes of establishing a tortious interference with business relations.

Moreover, Aurora did not engage in any intentional acts specifically designed to disrupt Jacobsen's relationship with O'Brien.  Plaintiffs allege that the sales transaction fell through because Aurora failed to provide plaintiffs with payoff information.  (SAC ¶ 100.)  As an initial matter, plaintiffs have not attached exhibits "T," "U," or "V" to their Second Amended Complaint, nor have they attached a single letter requesting a payoff amount.  Instead, plaintiffs attach a single letter from Jacobsen to Aurora in which he demands validation of a loan for which he has no standing to enforce. (SAC Ex. G.)

Even assuming that plaintiffs requested a payoff amount, Aurora would not be obligated to give plaintiffs a payoff amount until it had approved the proposed short sale of the property. However, Aurora never received a ***completed*** short sale application from either party.  (Trompisz Decl. ¶ 12.)  Aurora could not approve a short sale of the property without a completed application, and therefore Aurora did not act intentionally in failing to approve the short sale.  In light of plaintiffs' own failure to submit a completed short sale application, plaintiffs fail to establish "that the lost economic advantage would have been realized but for the defendant's interference." *Youst*, 43 Cal. 3d at 71.

Last, plaintiffs' claim fails because they have shown no damages.  As stated above, there is no plausible way either plaintiff could have relied on this short sale transaction coming through before lender approval, especially when they never submitted a completed short sale application to Aurora for its proper consideration.  Moreover, plaintiffs' claims of damages are speculative at best. Plaintiffs claim that had Aurora given plaintiffs a payoff Jacobsen would have been able to complete renovations and the value of the property would have increased substantially, thereby possibly giving

AKERMAN SENTERFITT LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**

Jacobsen equity in the property. (SAC ¶¶ 105–08.) However, allegations of what Jacobsen "would have done" or what "might have happened" fall far short of showing that either plaintiff suffered any actual damages as a result of the alleged breach.

**6.**   **Plaintiff is Not Entitled to Any Restitution for Monies Paid to Aurora.**

Plaintiffs' sixth cause of action for "money mistakenly paid" again relies exclusively on their claim that the Note and Deed of Trust were void because Direct Funding did not exist at the time O'Brien entered into the Note and Deed of Trust. (SAC ¶¶ 115-19.) It appears from plaintiffs' Second Amended Complaint, O'Brien bases his claim on the theory that "money paid under a mistake of fact may be recovered back . . . unless the payment has caused such a change in the position of the other party that it would be unjust to require him to refund." *Nat'l Bank of Cal. v. Miner*, 167 Cal. 532, 537 (1914). Such cases are limited to situations where "money was paid by plaintiff to defendant under a ***mistaken belief*** that such payment was ***required***." *Wal-Noon Corp. v. Hill*, 45 Cal. App. 3d 605, 612 (1975) (emphasis added).

Here, O'Brien did not make the payments to either Aurora or his previous servicer, GreenPoint, under any mistaken belief as to whether he owed money on the loan. O'Brien admits he obtained a loan for $1.24 million, and evidence establishes that plaintiff enjoyed the fruits of that loan. (*See* Trompisz Decl. Ex. 10.) O'Brien does not make any legitimate claim that Aurora was not entitled to payments under the loan, nor that his payments did not extinguish any part of that loan. Indeed, he cannot because under CAL. COM. CODE § 1201(a)(21)(B), Aurora is the undisputed holder of O'Brien's promissory note and thus any payments made to Aurora serve to extinguish that portion of the debt paid. § 3602(a). It would simply be inequitable to ask that Aurora return money paid by O'Brien so that he not only retain the benefits of the Loan, but also thousands of dollars in money paid with the sole purpose of repaying that Loan.

Most importantly, however, is the fact that plaintiffs' sole premise for his claim–that the Deed of Trust is void–is just plain wrong, as established in detail above.

For these reasons, plaintiffs' claim for "money mistakenly paid" must be dismissed and summary judgment on this claim must be entered in favor of Aurora.

AKERMAN SENTERFITT LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

## C. Plaintiffs' Claims are Barred by Res Judicata.

Not only are defendants entitled to summary judgment because there are no genuine issue of material fact, plaintiffs' attempt to have O'Brien's Loan voided and title quieted in Jacobsen's favor is barred by the doctrine of claim preclusion. Plaintiffs allege Jacobsen is entitled to have title to the Property quieted in his favor because the Deed of Trust was void *ab initio*, due to the fact that O'Brien's lender – Direct Funding – was not incorporated in California at the time the Deed of Trust was signed in 2006. (SAC ¶ 33.) However, these exact allegations were already specifically raised and dismissed in the State Action, requiring dismissal of this case in its entirety and judgment in favor of defendants.

Under the doctrine of claim preclusion, a final judgment on the merits of an action precludes the same parties from relitigating the same claim raised in that action, whether or not the same issues are raised in the subsequent matter. *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (citing *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)). The elements necessary to establish claim preclusion are, "(1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." *Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1052 (9th Cir. 2005) (quoting *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003)).

### 1. There Are Identity of Claims.

There are an identity of claims between this action and the State Action. In determining whether there exists an identity of claims, courts within the Ninth Circuit look at "(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts." *Headwaters*, 399 F.3d at 1052 (quoting *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201-02 (9th Cir. 1982)).

Here, the elements point toward an identity of claims between the State Action and the current matter. In the State Action, Jacobsen brought claims for (1) unjust enrichment; (2) "No Contract;" (3) Tortious Interference with Business Relationship; (4) Quiet Title; (5) Declaratory and Injunctive Relief; (5) Wrongful Foreclosure; and (6) Fraud. (Edwards Decl. Ex. 10.) Each and every claim was

AKERMAN SENTERFITT LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

based on the underlying Loan transaction at issue in the instant action, as well as Jacobsen's allegations that he is entitled to have title quieted in his favor. (*See id.*)  Here, Jacobsen and O'Brien bring claims for (1) Truth in Lending Act; (2) Quiet Title; (3) Wrongful Foreclosure; (4) Cancellation of Instruments; (5) Economic Interference; (6) "Common Count;" and (7) Breach of Contract.  (*See* SAC.)  Specifically at issue in the SAC is Jacobsen's claim that title should be quieted in his favor. Although O'Brien had not yet deeded the Property to him, Jacobsen still argued in the State Action that he was entitled to have title quieted in his favor because the Deed of Trust was void *ab initio* due to the fact that Direct Funding was not incorporated and he had purchased the Property. (Edwards Decl. Ex. 10, at ¶ 233-52).

The two suits not only share similar causes of action, but are virtually identical in nature.  The rights and interests established at the conclusion of the State Action, i.e., that Jacobsen was not entitled to quiet title (among other things), will be infringed by this second action because it would subject Aurora to conflicting judgments.  Moreover, the exact same evidence was presented in the State Action as is presented here.  In fact, Jacobsen obtained the Affidavit of Jana Castro (**Castro Aff.**), on which he relies heavily in the instant action, in response to a subpoena sent in the State Action. (*See* Jacobsen Decl. Ex. C.)  If anything, Jacobsen has *narrowed* the focus of the allegations and evidence in this action.  Moreover, the two suits involve the exact same rights and arise out of the same nucleus of operative facts.  As a result, there exists identity of claims between the actions, barring Jacobsen's participation in this lawsuit in its entirety and requiring judgment in favor of defendants.

## 2. There Was a Final Judgment on the Merits.

A judgment is considered "on the merits" when it "actually passes directly on the substance of a particular claim before the court." *Semtek Int'l, Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 501-02 (2001).  The Ninth Circuit has found that where a court in a prior action dismisses an action with prejudice following a party's failure to respond, the judgment is one "on the merits" for purposes of claim preclusion.  *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 714 (9th Cir. 2001); *see also In re Schimmels*, 127 F.3d 875, 884 (9th Cir. 1997); *Johnson v. U.S. Dep't of Treasury*, 939 F.2d 820, 825 (9th Cir. 1991).

AKERMAN SENTERFITT LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

Here, Jacobsen filed the State Action and defendants filed a timely demurrer to the complaint. Jacobsen failed to respond in any way to defendants' demurrer. The Court ruled on that demurrer and issued a final judgment sustaining the demurrer with prejudice on January 10, 2012. (Edwards Decl. Ex. 11.) As a result, this judgment constitutes a final judgment on the merits for the purposes of barring this claim under the doctrine of claim preclusion. *See Owens*, 244 F.3d at 714.

### 3. There Is Privity Between the Parties.

"Privity" between the parties exist when the parties in a prior action represent "precisely the same right in respect to the subject matter involved" in the current action. *Headwaters*, 399 F.3d at 1053-54 (quoting *Schimmels*, 127 F.3d at 881). Privity exists here between the parties in the two actions because the same parties/rights are involved. The State Action was brought by Jacobsen against Aurora and MERS, among other parties. Here, Jacobsen and O'Brien bring the SAC against Aurora, MERS, and others. Although O'Brien was not a named plaintiff in the first action, he was named extensively in the substance of the complaint, as his claims were being litigated by Jacobsen. Thus Jacobsen represented the same rights of O'Brien in the State Action that O'Brien now asserts in this action. Also, according to Jacobsen, he is in privity with O'Brien by virtue of the assignment.

Because there is an identity of claims between the State Action and the instant action, the judgment in the State Action was final, and privity exists between the parties in the two actions, plaintiffs' claims here are precluded by claim preclusion, and the Court should enter judgment in defendants' favor for this additional reason.

### D. It Would Be Inequitable to Allow Title Be Quieted in Jacobsen's Favor.

Even assuming Jacobsen had a valid, superior claim to title, plaintiffs have failed to produce any evidence that would show the equities weigh in their favor. (*See* Mot.) In fact, they cannot because it would be *inequitable* to allow title to be quieted in Jacobsen's favor.

As a preliminary matter, if a defaulting borrower requests relief in equity, i.e., quiet title, California requires that he tender the amount due and owing. *See Jump v. Aurora Loan Servs. LLC, et al.*, No. 09 CV 189, 2009 WL 2020128, at *2 (S.D. Cal. July 10, 2009); *Arnolds Mgmt. Corp. v. Eischen*, 158 Cal. App. 3d 575, 578–79 (1984); *Humboldt Sav. Bank v. McCleverty*, 161 Cal. 285, 290–91 (1911); *Williams v. Koenig*, 219 Cal. 656, 660 (1934); *U.S. Cold Storage of Cal. v. Great W. Sav. & Loan*

*Ass'n*, 165 Cal. App. 3d 1214, 1222 (1985) (citations omitted). California's "tender rule" applies specifically in situations in which a mortgagor requests the court quiet title against the mortgagee without paying the debt secured. *Shimpones v. Stickney*, 219 Cal. 637, 649, 28 P.2d 673 (1934).

Plaintiffs have failed to produce any evidence (or even any argument) that it would be inequitable to require plaintiffs tender the amount due and owing under the Loan. O'Brien obtained $1,240,000 in Loan proceeds in order to refinance his house. (Trompisz Decl. Ex. 10.) Of these proceeds, O'Brien used $765,000 to pay off a loan from Wells Fargo, $167,000 to pay off a loan from World Savings and Loan, and $3,515.97 to pay back taxes owed on the Property. (*Id.* at 3.) In addition, O'Brien received **$286,110.37** in cash-out proceeds from the loan. (*Id.* at 1.) O'Brien stopped making payments under the Loan in 2010 (*Id.* Ex. 5), and thus cannot in good faith seek to have title quieted in anyone's favor until he or Jacobsen put the lender back in its original position, by paying back the principle amount borrowed on the Loan. Now O'Brien feels (1) he should be entitled to keep all the money he received in this transaction; (2) Aurora should return the payments he made under the Loan; and (3) Jacobsen should have title in the Property quieted to him for no consideration whatsoever. This is manifestly unjust.

Further, plaintiffs are incapable of tendering the amount due on the Loan in order to do equity. It is simply not sufficient to state that at one time, because Jacobsen received $1.52 million in financing, that he somehow could tender the amount due on the loan now. Because plaintiffs cannot tender the over $1.5 million principal owed on the Loan, they cannot have title quieted in their favor and therefore summary judgment cannot be granted on this claim. *Cf. Prescott v. BNC Mort., Inc.*, No. C 09-00805 SBA, slip op. at 1 (N.D. Cal. Apr. 17, 2009). Neither plaintiff is entitled to a windfall and neither is entitled to a free million-dollar home or over $280,000 in borrowed cash. Judgment in defendants' favor is only appropriate here.

## IV. CONCLUSION

For the foregoing reasons, defendants respectfully request the Court issue judgment in their favor and dismiss this action in its entirety.

AKERMAN SENTERFITT LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

Dated: April 19, 2012                    **AKERMAN SENTERFITT LLP**


By:   *Victoria E. Edwards*
          Justin D. Balser
          Victoria E. Edwards
      Attorneys for Defendants
      AURORA LOAN SERVICES LLC and
      MORTGAGE ELECTRONIC REGISTRATION
      SYSTEMS, INC.

## PROOF OF SERVICE

I am employed in the City and County of Denver, State of Colorado. I am over the age of 18 and not a party to the within action. My business address is 1400 Wewatta Street, Suite 500, Denver, Colorado 80202.

On **April 19, 2012**, I served the following documents by placing a true copy thereof in a sealed envelope(s) on the persons below as follows:

**DEFENDANTS AURORA LOAN SERVICES LLC'S AND MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'S NOTICE OF CROSS-MOTION AND CROSS-MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

Michael James Yesk
Law Offices of Michael Yesk
4 Fairway Pl.
Pleasant Hill, CA 94523
(510) 909-9700
Email: yesklaw@gmail.com

☐ (OVERNIGHT DELIVERY) I deposited in a box or other facility regularly maintained by USPS Express Mail, an express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents, a true copy of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed as stated above, with fees for overnight delivery paid or provided for.

☒ (CM/ECF Electronic Filing) I caused the above document(s) to be transmitted to the office(s) of the addressee(s) listed above by electronic mail at the e-mail address(es) set forth above pursuant to Fed.R.Civ.P.5(d)(1). "A Notice of Electronic Filing (NEF) is generated automatically by the ECF system upon completion of an electronic filing. The NEF, when e-mailed to the e-mail address of record in the case, shall constitute the proof of service as required by Fed.R.Civ.P.5(d)(1). A copy of the NEF shall be attached to any document served in the traditional manner upon any party appearing pro se."

I declare under penalty of perjury that I am employed in the office of a member of the bar of this Court at whose direction this service was made and that the foregoing is true and correct.

☐ (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒ (Federal) I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on April 19, 2012, at Denver, Colorado.

Tracie Jenkins
(Type or print name)
(Signature)

AKERMAN SENTERFITT LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

# EXHIBIT C

**AKERMAN SENTERFITT LLP**
JUSTIN D. BALSER (SBN 213478)
Email: justin.balser@akerman.com
725 South Figueroa Street, 38th Floor
Los Angeles, California 90017-5433
Telephone: (213) 688-9500
Facsimile: (213) 627-6342

**AKERMAN SENTERFITT LLP**
JUSTIN D. BALSER (SBN 213478)
Email: justin.balser@akerman.com
VICTORIA E. EDWARDS (CA SBN 269305)
Email: victoria.edwards@akerman.com
1400 Wewatta Street, Suite 500
Denver, Colorado 80202
Telephone: (303) 260-7712
Facsimile: (303) 260-7714

Attorneys for Defendants
AURORA LOAN SERVICES LLC and MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA (SAN FRANCISCO)

| | |
|---|---|
| MICHAEL T. O'BRIEN, an individual and ROBERT E. JACOBSEN, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>AURORA LOAN SERVICES LLC, a Delaware Limited Liability Company; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation, CAL-WESTERN RECONVEYANCE CORPORATION, a California Corporation and DOES 1-10, inclusive.<br><br>Defendants. | Case No. 3:12-CV-00135-RS<br>(The Hon. Judge Richard Seeborg)<br><br>**DECLARATION OF KRISTEN TROMPISZ IN SUPPORT OF AURORA LOAN SERVICES LLC AND MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date:<br>Date: _____, 2012<br>Time: 1:30 p.m.<br>Ctrm: 3<br><br>Second FAC Filed: February 8, 2012<br>FAC Filed: February 3, 2012<br>Complaint Filed: December 1, 2011<br>Trial Date: None |

**DECLARATION OF KRISTEN TROMPISZ**

I, Kristen Trompisz, declare as follows:

1.     I am a resident of the State of Colorado. I am over 18 years of age, and have not been convicted of a felony or a crime involving dishonesty.

2.     I am employed as a Legal Liaison of Aurora Bank FSB (**Aurora Bank**), which now subservices mortgage loans for defendant Aurora Loan Services LLC. Previously, I was a Legal Liaison of Aurora Loan Services LLC (**Aurora Loan**), servicer of plaintiff Michael T. O'Brien's (**O'Brien**) former loan from March 2007 to the time the foreclosure process was initiated on O'Brien's former real property located at 1040 Pine Lane, Lafayette, California 94549 (the **Property**). Effective July 21, 2011, Aurora Bank began subservicing for Aurora Loan and all of the records and processes referenced in this affidavit were transferred without change or alteration from Aurora Loan to Aurora Bank on that day.

3.     As the servicer, Aurora Bank is now and Aurora Loan was the entity responsible for among other things, receiving and crediting any scheduled periodic payments pursuant to the terms of O'Brien's promissory note and mortgage evidencing the mortgage loan at issue in this action, including amounts for any escrow payments, and for enforcing the terms of the note and deed of trust, for and on behalf of the owner of the loan.

4.     I have personal knowledge of the facts contained in this declaration by virtue of my review and analysis of the relevant business records and other documents of Aurora Loan and Aurora Bank attached and referenced herein. More particularly, I am familiar with the systems of record that Aurora Loan used and Aurora Bank now uses to create and record information related to the residential mortgage loans that they service or serviced, including the process by which employees of Aurora Loan entered and Aurora Bank now enters information in those systems. I am aware that Aurora Loan employees entered or caused to be entered information relating to customer payments, principal, interest, fees, and other charges in those systems of record at a time when they had personal knowledge of that information. I am also aware that Aurora Bank employees enter or cause to be entered information relating to customer payments, principal, interest, fees, and other charges in those systems of record at a time when they have personal knowledge of that information.

1   The records contained in those systems were made at or near the time of the occurrence of the

2   matters set forth in the records. These records were maintained in the regular course of Aurora

3   Loan's business as a loan servicer, and continue to be maintained by Aurora Bank in its business as a

4   subservicer. It was the regular practice of Aurora Loan to make such records, and Aurora Loan used

5   to rely on those records in the ordinary course of its business. It is now the regular practice of

6   Aurora Bank to make such records, and Aurora Bank relies on those records in the ordinary course

7   of its business.

8        5.    Aurora Loan employed, and Aurora Bank continues to employ industry-standard

9   enterprise computer systems, including mortgage servicing software MSP and LPS Desktop. Aurora

10  Loan used these systems to store and generate these records in the course of its business, and Aurora

11  Bank continues to use those same systems to store and generate these records in the course of its

12  business. The systems are maintained to assure reliability and accuracy in the storage and retrieval

13  of information. Aurora Loan authorized, and Aurora Bank continues to authorize, specific personnel

14  trained to access and produce information from these records. I am one such individual who is

15  authorized and trained to access these records.

16       6.    As part of my job responsibilities for Aurora Loan and Aurora Bank, I am familiar

17  with the types of records maintained in connection with the loan at issue, and have reviewed these

18  records as they relate to the loan prior to my execution of this declaration. The exhibits attached to

19  this declaration are true and correct copies of documents that were a part of Aurora Loan's systems

20  of record, and are now a part of Aurora Bank's systems of record.

21       7.    According to Aurora Bank's records, Aurora Loan serviced O'Brien's mortgage loan

22  and Aurora Bank subserviced it. Aurora Loan sent a Notice of Assignment, Sale, or Transfer of

23  Servicing Rights (**Notice**) to O'Brien and Jill O'Brien on February 27, 2007. A true and correct copy

24  of this business record is attached hereto as **Exhibit 1**, which was maintained on O'Brien's loan in

25  the ordinary course of Aurora Loan and now Aurora Bank's business. This Notice served to notify

26  O'Brien and Jill O'Brien that Aurora Loan would being servicing their loan as of March 1, 2007.

27       8.    Aurora Loan's records reflect that on or about November 21, 2006, O'Brien and Jill

28  Wagner O'Brien (**Jill O'Brien**) obtained a $1,240,000.000 loan (**loan**) to refinance existing loans

{24024438;1}            3               CASE NO. 3:12-CV-00135-RS

**DECLARATION OF KRISTEN TROMPISZ**

1  securing the Property. Attached as **Exhibit 2** is a true and correct copy of the original promissory

2  note for the loan, kept by Aurora Bank in the normal course of its business, and previously kept in

3  Aurora Loan's normal course of business. I have reviewed the promissory note for plaintiff's loan.

4  A review of this promissory note reveals it was made to the order of Direct Funding. An allonge is

5  attached to the note, in which the note is specially endorsed from Direct Funding to Greenpoint

6  Mortgage Funding, Inc., and ultimately endorsed in blank by Greenpoint Mortgage Funding, Inc.

7  Aurora Bank is currently in possession of plaintiff's original promissory note.

8      9.    Attached as **Exhibit 3** is a true and correct copy of the original deed of trust on

9  O'Brien's loan, securing an interest in the Property. I have reviewed the deed of trust, which is kept

10  by Aurora Bank in the normal course of its business and was previously kept in Aurora Loan's

11  normal course of business. According to page one of the deed of trust, Mortgage Electronic

12  Registration Systems, Inc. (**MERS**), as nominee, held legal title to the Deed of Trust and was given

13  a beneficial interest in the deed of trust as nominee for Direct Funding, O'Brien's original lender,

14  and its successors and assigns in order to take any action on behalf of the lender, including

15  foreclosure.

16      10.    According to Aurora Bank's records, a corporate assignment of the deed of trust

17  (**Assignment**) was completed on or about March 16, 2011, by MERS to Aurora Loan, for which

18  Aurora Bank became the subservicer. I have reviewed the Assignment, and have attached as

19  **Exhibit 4** a true and correct copy of the Assignment. The Assignment is kept in the ordinary course

20  of Aurora Bank's business and was kept in the ordinary course of Aurora Loan's business.

21      11.    Aurora's business records, now Aurora Bank's business records, do not show plaintiff

22  Robert E. Jacobsen (**Jacobsen**) is a borrower on the loan related to the Property, nor has he been a

23  borrower at any time relevant to this action.

24      12.    Aurora Loan and now Aurora Bank's records do not show a completed short sale

25  application submitted by O'Brien to sell the Property to any third party, including Jacobsen. Nor do

26  the servicing notes show Aurora Loan or Aurora Bank approved a short sale of the Property.

27      13.    Aurora Loan's business records, which are now Aurora Bank's records, do not show

28  that Aurora Loan, Aurora Bank or any other defendant in this action authorized the transfer of title to

{24024438;1}                                    4                        Case No. 3:12-CV-00135-RS
                                  **DECLARATION OF KRISTEN TROMPISZ**

1    the Property to Jacobsen, which according to the records is required under the Deed of Trust for a

2    title transfer to be effective.

3        14.    Aurora Bank's records demonstrate that neither Aurora Loan as servicer nor Aurora

4    Bank as subservicer owned O'Brien's loan before it was foreclosed upon; they serviced it. As

5    servicer of the loan, Aurora Bank and Aurora Loan were responsible for, among other things,

6    initiating foreclosure proceedings following default, and providing the required notices pursuant to

7    the terms of the promissory note and deed of trust evidencing the loan.

8        15.    Aurora Bank's records show that the current owner of O'Brien's loan is U.S. Bank,

9    N.A., as trustee for GreenPoint Mortgage Funding Trust, Series 2007-AR1 (the **Trust**). O'Brien's

10    loan has been in the Trust since the closing date of February 28, 2007.

11        16.    According to Aurora Loan and Aurora Bank's records, O'Brien paid the loan mostly

12    without incident until October 2010, when he defaulted. Attached here as **Exhibit 5** is a true and

13    correct copy of the payment history on O'Brien's loan, maintained in the ordinary course of Aurora

14    Loan and now Aurora Bank's business. This payment history details O'Brien's mortgage payments

15    on the loan, which history was recorded by Aurora Loan and Aurora Bank's employees

16    contemporaneously with O'Brien making payments on his loan. Based on my review, it appears

17    O'Brien's loan, prior to foreclosure, was due for the October 2010 payment.

18        17.    Based on my review of Aurora Loan and Aurora Bank's records on the loan, O'Brien

19    owed $1,510,350.67 on the mortgage at the time the foreclosure sale took place on the Property.

20        18.    According to Aurora Loan and Aurora Bank's records related to the loan, Aurora

21    Bank sent a letter to O'Brien and Jill O'Brien on July 21, 2011. A true and correct copy of that

22    letter is attached hereto as **Exhibit 6**, which was maintained in the ordinary course of Aurora Loan

23    and is now maintained in the ordinary course of Aurora Bank's business. This letter notified

24    O'Brien that $1,493,963.04 was due on the loan as of July 21, 2011.

25        19.    Aurora purchased the Property at a trustee's sale on September 13, 2011. Aurora

26    placed the highest bid at the sale of $1,513,815.43 in cash. A true and correct copy of the

27    Trustee's Deed Upon Sale is attached hereto as **Exhibit 7**. The Trustee's Deed Upon Sale is kept

28    in the ordinary course of Aurora Bank's business.

20.     As the servicer for O'Brien's loan, Aurora Loan and now Aurora Bank maintained in its records a full and complete copy of the origination documents related to the origination of the loan. I am familiar with the systems of record that Aurora Loan and now Aurora Bank uses to store and maintain those documents in our system of records. I am also familiar with the process by which employees of Aurora Loan entered and Aurora Bank now enter information into those systems.

21.     According to Aurora Loan and Aurora Bank's records, O'Brien and Jill O'Brien signed a Notice of Assignment, Sale or Transfer of Servicing Rights on November 22, 2006. A true and correct copy of this Notice is attached hereto as **Exhibit 8**, which was maintained in the ordinary course of Aurora Loan and is now maintained in the ordinary course of Aurora Bank's business. This Notice notified O'Brien that Greenpoint Mortgage Funding, Inc. was the servicer on his loan at its origination.

22.     According to Aurora Loan and Aurora Bank's records, O'Brien and Jill O'Brien signed a California Borrower Acknowledgement as part of the origination documentation signed at the origination of the loan. A true and correct copy is attached hereto as **Exhibit 9**, which was maintained in the ordinary course of Aurora Loan and is now maintained in the ordinary course of Aurora Bank's business.

23.     According to Aurora Loan and Aurora Bank's records, O'Brien and Jill O'Brien received a HUD-1 Settlement Statement outlining the money borrowed in the loan transaction between O'Brien, Jill O'Brien, and Direct Funding. A true and correct copy of the HUD-1 Settlement Statement, dated November 21, 2006, is attached hereto as **Exhibit 10**, which was maintained in the ordinary course of Aurora Loan and is now maintained in the ordinary course of Aurora Bank's business.

I declare under penalty of perjury under the laws of the state of Colorado that the foregoing is true and correct.

Executed on April 18, 2012, in Littleton, Colorado

{24024438;1}                                                        6                                          CASE NO. 3:12-CV-00135-RS

**DECLARATION OF KRISTEN TROMPISZ**

# EXHIBIT D

1    MICHAEL YESK (SBN 130056)
     70 Doray Drive, #16
2    Pleasant Hill, CA 94523
     yesklaw@gmail.com
3    510-909-9700

4    Attorney for Plaintiffs
     MICHAEL T. O'BRIEN and
5    ROBERT E. JACOBSEN

6

7

8

9                  UNITED STATES DISTRICT COURT

10                NORTHERN DISTRICT OF CALIFORNIA

11                   (SAN FRANCISCO DIVISION)

12

13   MICHAEL T. O'BRIEN, an individual and        Case No. 3:12-CV-00135-RS
     ROBERT E. JACOBSEN, an individual,
14                                                 The Hon. Judge Richard Seeborg
                   Plaintiffs,
15                                                 **PLAINTIFFS' OPPOSITION TO**
            vs.                                    **DEFENDANTS' MOTION FOR**
16                                                 **SUMMARY JUDGMENT**
     AURORA LOAN SERVICES, LLC, a
17   Delaware Limited Liability Company, CAL-         Date:          May 24, 2012
     WESTERN RECONVEYANCE
18   CORPORATION, a California Corporation            Time:          1:30 p.m.
     and DOES 1-10, inclusive.
19                                                   Department:    Courtroom 3, 17th Fl.
                   Defendants.
20                                                   Judge:         Hon. Richard Seeborg

21                                                   Complaint Filed:  December 1, 2011

22                                                   Date of Trial:    None Set

23

24

25

26

27

28

# **TABLE OF CONTENTS**

TABLE OF CONTENTS…………………...…………………………………………i

TABLE OF AUTHORITIES…………………………………………………………ii

ISSUE TO BE DECIDED…………………………………………………………............1

MEMORANDUM OF POINTS AND AUTHORITIES…………………………….............1

I.    INTRODUCTION………………………………………………………………1

II.   FACTS…………………………………………………………………………...........4

III.  ARGUMENT…………………………………………………………………5

    A.   PLAINTIFF TENDERED THE FULL AMOUNT OF THE LOAN
    AND DEFENDANTS REJECTED THE SAME; CONSEQUENTLY,
    THE DEED OF TRUST WAS NULLIFIED, THE FORECLOSURE
    WAS WRONGFUL AND JACOBSEN IS ENTITLED TO
    RECONVEYANCE OF THE PROPERTY FROM AURORA TO HIM………5

    B.   PLAINTIFFS SUIT IS NOT BARRED BY CLAIM PRECLUSION…………6

    C.   WHETHER OR NOT A DBA WAS FILED BY VALID
    CORPORATION IN THE NAME OF "DIRECT FUNDING", THE
    PURPORTED LENDER HEREIN, "DIRECT FUNDING, A
    CALIFORNIA CORPORATION" DOES NOT HAVE
    CONTRACTUAL CAPACITY; CONSEQUENTLY, THE DEED
    OF TRUST IS VOID………………………………………………9

    D.   DEFENDANTS' CASE LAW IS NOT ON POINT……………………………9

    E.   AURORA HAS NOT RAISED AN ISSUE OF DISPUTED FACT
    REGARDING THE FAILURE OF THE CONTRACT TO
    IDENTIFY THE PARTIES THERETO…………………………………11

    F.   PLAINTIFF'S ARE NOT REQUIRED TO TENDER…………………………13

    G.   NO EQUITABLE LIEN CAN ARISE FROM A VOID CONTRACT…………14

    H.   AURORA HAD NO AUTHORITY TO PURCHASE THE
    PROPERTY WITH A CREDIT BID AT THE TRUSTEE'S SALE……...........15

    I.   PLAINTIFFS OBJECT TO AURORA'S EVIDENCE…………………………16

    J.   LEAVE TO AMEND………………………………………………21

IV.  CONCLUSION…………………………………………………………………............21

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:12-CV-00135-RS

# **TABLE OF AUTHORITIES**

**Cases:**

*Aguilar v. Lerner,*
    32 Cal.4th 974 (2004).................................................................7

*Biasca v. Superior Court,*
194 Cal. 366 (1924)....................................................................14

*Handyman Connection of Sacramento, Inc. v. Sands,*
    123 Cal.App.4th 867 (2004)..................................................9-10

*Hauger v. Gates,*
    42 Cal.2d 752 (1954)............................................................14

*Hirschfeld v. Mckinley,*
    78 F.2d 124 (9th Cir. 1935)...................................................15

*Howell v. Dowling,*
    52 Cal.App.2d 487 (1942) ...................................................14

*Humboldt Sav. Bank v. McCleverty,*
    161 Cal. 285 (1911)............................................................13

*Lona v. Citibank, NA,*
    202 Cal.App.4th 89 (2011)..................................................13

*McCracken v. San Francisco,*
    16 Cal. 591(1860)..............................................................15

*Mendez-Cardona v. Saxon Mortgage, Inc.,*
    No. G043420, 2011WL579205 at *5, (Cal. Ct. App. February 18, 2011) (unpub.)........14

*Ottolini v. Bank of Am.,*
2011 U.S. Dist. LEXIS 92900, 9-11 (N.D. Cal. Aug. 19, 2011).......................13

*Stockton v. Newman*
    148 Cal.App.2d 558 (1957) .................................................13

*Wallace v. Miller,*
    140 Cal.App.3d 636 (1983)..................................................14

*Winnett v. Roberts,*
    179 Cal.App.3d 909 (1986)..............................................1, 5-6

**Statutes:**

Cal. Bus. & Prof. Code

    §17900.........................................................................11

    § 17900(a)(1)...............................................................2, 10

ii

Cal. Civ. Code

§ 1558.................................................................................2, 11, 13

§ 1667....................................................................................11

§ 1689.7..................................................................................10

§ 2924(a)(1)...............................................................................2

§ 2924h(b)..............................................................................2, 16

§ 2932.5...................................................................................1

Cal. Code Civ. Proc.

§ 726.....................................................................................15

§ 2941.....................................................................................6

Cal. Corp. Code

§ 202(a)..................................................................................10

**Rules:**

Fed. R. Civ. Pro.

7(a).......................................................................................8

12..........................................................................................8

12(b)(6)....................................................................................3

12(c).......................................................................................8

12(h)........................................................................................8

19(b).......................................................................................8

56(c)(1)(A)................................................................................16

56(c)(2)....................................................................................16

Fed. R. Evid.

901(b)(1)..................................................................................18

902(4).....................................................................................17

iii

1

### ISSUE TO BE DECIDED

2

3

4

5

The issue to be decided is whether Aurora Loan Services, LLC and Mortgage Electronic Registrations Systems, Inc. are entitled to summary judgment as to all of the claims of Plaintiffs Michael O'Brien and Robert E. Jacobsen herein. Plaintiffs respectfully submit that issue should be determined by the Court in the negative.

6

### MEMORANDUM OF POINTS AND AUTHORITIES

7

### I. INTRODUCTION

8

9

10

11

12

13

14

15

Here, Plaintiffs [(Michael T. O'Brien ("O'Brien") and Robert E. Jacobsen ("Jacobsen") (collectively, "Plaintiffs")] attempted to pay off any amount due under the purported loan. Declaration of Michael T. O'Brien ("O'Brien Decl.") ¶ 2, Exh. A. O'Brien entered into a purchase and sale agreement to sell the property to Jacobsen. First Amended Complaint (Doc. # 8) ("FAC"), Exh. C. Jacobsen also obtained financing and was approved for a loan sufficient to pay any amount due under the purported loan. Declaration of Robert E. Jacobsen, ¶ 2, Exh. A. Thus, Plaintiffs not only complied with any tender requirement hereunder, but, also thereby nullified the purported deed of trust securing the purported note[1].

16

17

18

19

20

21

22

23

In an attempt to escape liability under the Truth In Lending Act ("TILA"), Defendant, Aurora Loan Services, LLC ("Aurora"), states it never acquired any interest in the purported loan except the right to be a servicer for the same. Since it didn't own the loan, Aurora contends it is not liable for failing to give Plaintiffs notice of its assignment of the deed of trust from MERS. First, such contention is belied by the fact that such assignment – by its very terms – purported to assign "all" of MERS' beneficial interest in the deed of trust to Aurora, not just servicing rights[2]. Declaration of Kristen Trompisz ("Trompisz Decl."), ¶ 10, Exh. 4. Second, despite Aurora's further contention that it made a cash bid – based on a statement in the trustee's deed of illegible

24

25

---

[1] *Winnett v. Roberts,* 179 Cal.App.3d 909, 922 (1986) (lender's refusal to accept tender was sufficient to discharge the security).

26

27

28

[2] Furthermore, Aurora's claim that it never had ownership of the loan indicates it was without authority to order the foreclosure. Cal. Civ. Code § 2932.5 ["Where a power to sell real property is given…in an instrument intended to secure the payment of money, the power is part of the security and vests in any person who by assignment becomes entitled to payment of the money secured by the instrument." (emphasis added)].

1

attribution – such contention is belied by Jacobsen's Declaration in which he contends that a credit bid was submitted[3]. Jacobsen Decl., ¶ 3. Third, if Aurora's contention that it is just a servicer is true, Jacobsen is entitled to have the sale set aside and title quieted in his favor because Aurora, as mere servicer, may not acquire the property by credit bid[4].

Next, Aurora contends Plaintiffs argument that the purported loan herein is void fails because Bush & Hewitt Holding, Inc. filed a dba in the County of Riverside denominated "Direct Funding." However, Aurora downplays the fact that the identity of the purported lender was meticulously obscured in all of the purported loan documents and all of the non-judicial foreclosure documents. Such obfuscation of the identity if a party to the purported deed of trust renders such deed of trust void for illegality, since it is prohibited both by law and public policy for a variety of reasons. First, Cal. Civ. Code § 1558 states it is essential for the validity of a contract that the parties be identified. Second, the Fictitious Business Name Law was designed to protect the class of consumers from not being able to determine the identity of the party it is dealing with[5]. Here, that failure to do so prevented O'Brien from determining who he should get loan payoff information from, and, consequently, preventing the actual payoff of the same, interfered with his business relationship with Jacobsen. Jacobsen Decl., ¶ 4, Exh. B; O'Brien Decl., ¶ 3. Furthermore, it is clear, that despite filing of fictitious business name statements herein, the issue of which entity filing a dba named "Direct Funding" is the one who originated the purported loan, if any, is, at the very least, still disputed, since documents relied upon by Aurora show both Bush & Hewitt Holding, Inc. and Bush & Hewitt Holdings, Inc. may have been

---

[3] Neither Aurora, nor the "lender" was present at the trustee's sale. The trustee's representative told Jacobsen that the "lender" had won the bidding with its credit bid. That representative declined to tell Jacobsen who that "lender" was. Jacobsen Decl., ¶ 3.

[4] While California's non-judicial foreclosure law allows an agent of a lender to initiate foreclosure proceedings by filing a notice of default pursuant to Cal. Civ. Code § 2924(a)(1), it is clear that the legislature intended only a lender to credit bid at the trustee's sale since similar language regarding such agent's powers is omitted from Cal. Civ. Code § 2924h(b).

[5] Cal. Bus. & Prof. Code § 17900(a)(1) states: "The filing of a fictitious business name certificate is designed to make available to the public the identities of persons doing business under the fictitious name."

2

1  California Corporations who each filed a dba for "Direct Funding" – further obscuring who really

2  was the lender in this case.

3      Next, Aurora claims it is undisputed that O'Brien defaulted under the purported loan.

4  However, it is clear from Plaintiffs' complaint[6] that Plaintiffs not only don't concede a default

5  under the purported loan, but that they contend the loan has been paid. See, FAC, ¶¶ 49-53.

6  Aurora's purported evidence in this regard, if admissible, only shows a purported loan accounting

7  with O'Brien – not third party payments that should be credited against any balance due under the

8  purported loan. Id.

9      Next, Aurora contends this entire action is barred by the doctrine of *res judicata*. First,

10  this action is not based on the same facts as the state court action since Plaintiffs herein allege

11  different facts. For example, Plaintiffs herein allege tender of the purported loan amount and that

12  the purported loan has been paid, whereas, there was no such allegation in the state court action.

13  Second, Aurora has waived any defense of *res judicata* by not raising it in its prior Rule 12(b)(6)

14  Motion to Dismiss. Third, the state courts' sustaining of the demurrer without leave to amend

15  was based upon Jacobsen purportedly not having "standing under the loan" and, thus,

16  determining, as a threshold matter, that he was not a real party in interest who could bring the suit

17  in the first instance. Therefore, the state court did not reach consideration of Jacobsen's claim

18  that the purported loan was void. Fourth, Aurora is judicially estopped from claiming that

19  O'Brien is in privity with Jacobsen – the sole plaintiff in the state court action – because Aurora

20  vigorously denied O'Brien had conveyed the property to Jacobsen or that he had assigned his

21  causes of action to Jacobsen therein. Consequently, Aurora contended Jacobsen did not have

22  standing to bring the state court action. Judicial estoppel now prevents Aurora from taking the

23  opposite position.

24      Next, Aurora claims Plaintiffs have failed to tender the loan amount. However, such

25  tender is not required where the purported loan is void. Furthermore, if such tender were required

26  Plaintiffs have tendered the loan amount in an attempt to pay-off any amount allegedly due

27  _____

28  [6] Aurora appears to move for summary judgment as to the amended complaint mistakenly filed
   herein (Doc. #12) rather than the operative First Amended Complaint ("FAC") (Doc. #8).

3

1   thereunder.  However, in interfering with the economic relationship between the Plaintiffs,

2   Aurora prevented a pay-off from occurring.  Such inequitable conduct by Aurora cannot now

3   require tender of the loan amount to it.

4       Finally, Aurora does not establish it is entitled to summary judgment as to any of

5   Plaintiffs' claims, each of which has been supported by facts disputing those alleged by Aurora.

6   **II.    FACTS[7]**

7       The property that plaintiffs seek to quiet title to is 1040 Pine Lane, Lafayette, California

8   ("property").  The property was acquired in fee by Michael T. O'Brien and Jill Wagner O'Brien

9   on August 16, 1994.

10      On or about December 1, 2006, the void deed of trust was recorded against the property.

11   Mortgage Electronic Registration Systems, Inc. ("MERS") purported to be the beneficiary under

12   that void deed of trust as nominee for the purported lender, Direct Funding, a California

13   Corporation ("Direct Funding").

14      The property was then transferred by Michael T. O'Brien and Jill Wagner O'Brien to

15   Michael T. O'Brien on July 15, 2011.

16      Finally, the property was transferred to its current owner, Robert E. Jacobsen ("Jacobsen")

17   by deed recorded on September 12, 2011.

18      On September 13, 2011, Cal-Western Reconveyance Corporation ("CWR") purported to

19   sell the property at a purported trustee's sale to Aurora Loan Services, LLC ("Aurora").

20      On September 22, 2011, CWR recorded the void trustee's deed purportedly granting the

21   property to Aurora.

22      On November 1, 2011, Jana Castro, Deputy Secretary of State for the State of California,

23   authorized by the custodian of records for the same, stated under penalty of perjury that no record

24   exists in that office under the name "Direct Funding"[8].

25   ―――――――――――――――
[7] For the sake of brevity in this reply, Plaintiffs incorporate their verified First Amended

26   Complaint and all attached documents (Doc. #8) by reference herein.
[8] A Certificate of No Record and supporting Declaration stating there are no documents filed with

27   the California Secretary of State in the name of "Direct Funding" has been issued.  Declaration of
Michael Yesk ("Yesk Decl."), ¶ 2, Exh. A.  Plaintiffs will bring the original of such certificate to

28   the hearing on this motion.

1

## III. ARGUMENT

2

### A. PLAINTIFF TENDERED THE FULL AMOUNT OF THE LOAN AND DEFENDANTS REJECTED THE SAME; CONSEQUENTLY, THE DEED OF TRUST WAS NULLIFIED, THE FORECLOSURE WAS WRONGFUL AND JACOBSEN IS ENTITLED TO RECONVEYANCE OF THE PROPERTY FROM AURORA TO HIM

3

4

5

Here, Plaintiffs attempted a conventional sale that would have paid off any amount

6

purportedly due under the loan. O'Brien notified Aurora that he had a purchaser of the property

7

and intended to pay off any amount purportedly due under the loan. Declaration of Michael T.

8

O'Brien, ¶ 2, Exh. A. Moreover, Aurora admits it received written notification of Jacobsen's loan

9

that would paid off any amount due the purported lender herein by its servicing notes in which it

10

was written: "...RECEIVED FAX FROM BORROWER DATED 9/6/11 REQUESTING

11

POSTPONEMENT OF SALE AS HE IS IN THE PROCESS OF SELLING THE PROPERTY

12

AND HAS A BUYER WHO IS ABOUT TO CLOSE ON LOAN...". Declaration of Kristen

13

Trompisz In Opposition to Plaintiff's Motion for Partial Summary Judgment, ¶ 12, Exh. 3, p. 2

14

(Doc. # 28, Attachment 3).

15

It is clear Jacobsen had a loan commitment from a lender in an amount sufficient to pay

16

off any amount due under the purported loan herein - $1,525,000.00. First Amended Complaint,

17

Exh. E (Doc. # 8, Attachment 1). However, rather than giving O'Brien pay off information,

18

Aurora opted instead to proceed to foreclosure sale exactly a week later. Jacobsen Decl., ¶ 4,

19

Exh. B.

20

Similarly, the Plaintiffs in *Winnett v. Roberts,* 179 Cal.App.3d 909 (1986), tendered the

21

loan amount to save their home from foreclosure. Likewise, such tender was refused by the

22

lender and the lender proceeded to foreclosure sale. In *Winnett,* the plaintiffs filed suit to enjoin

23

the foreclosure sale and lost when the defendant's summary judgment motion was granted.

24

However, the Court of Appeals reversed that judgment, ordering the trial court to cancel the

25

trustee's sale, the trustee's deed and the deed of trust and to quiet plaintiffs' title as against

26

defendants. The *Winnett* Court held that the lender's rejection of the tender made by plaintiffs

27

resulted in there being no valid lien against the property and required the reconveyance of the

28

5

1   property back to plaintiffs free and clear. *Winnett v. Roberts*, 179 Cal.App.3d at 922 (1986); See,

2   also, Cal. Code Civ. Proc. § 2941.

3       The same result is called for here since O'Brien tendered the amount of the purported loan

4   and that tender was refused by Aurora.

5   **B.    PLAINTIFFS SUIT IS NOT BARRED BY CLAIM PRECLUSION**

6       Defendants' assertion that the state court proceeding was a judgment on the merits based

7   upon the "same exact evidence" presented here is simply not true. In fact, the Declaration of Jana

8   Castro referred to by Defendants was not attached to Plaintiff's complaint in the state court action

9   because he did not yet receive it from the California Secretary of State prior to the suit being

10  filed.

11      Additionally, the state court's decision on the substantially similar demurrer of Greenpoint

12  Mortgage Funding, Inc.[9] makes it clear that the reason for sustaining the demurrer was not

13  because the court rejected Plaintiff's allegations regarding Direct Funding, but, rather, because

14  the court found Plaintiff did not have standing as O'Brien's assignee to "sue under the loan."

15  Thus, whether the loan was void or not was not essential to the court's decision because the court

16  found Plaintiff did not have standing to challenge it in the first instance. Since the court's

17  decision on demurrer was not based on the allegations Plaintiffs present here, there could not be a

18  final decision on the merits based upon substantially the same evidence.

19      Moreover, Defendants now contend that there is privity between Jacobsen and O'Brien

20  and that they are entitled to summary judgment as to O'Brien's entire action. However,

21  Defendants argued the opposite in the state court action in which the central argument in its

22  demurrer was that Jacobsen had no standing as O'Brien's assignee, an argument that persuaded

23  the court to sustain their demurrer. Declaration of Michael Yesk In Support Of Reply To

24  Opposition To Plaintiff's Motion For Partial Summary Judgment (Doc. # 29), ¶ 4, Exh. C.

25  Having argued in the prior state court action that there was no privity between Jacobsen and

26

27  ────────────────
[9]At the hearing on the demurrer, the state court allowed Plaintiff to file a late opposition to

28  Aurora's demurrer. Declaration of Michael Yesk In Support Of Reply To Opposition To
Plaintiff's Motion For Partial Summary Judgment (Docs. # 29 & 30), ¶ 3, Exh. B.

6

1   O'Brien, Defendants cannot now argue privity exists.  Defendants are judicially estopped from

2   asserting the opposite contention.

3       In California, courts consider five factors in determining whether to apply judicial

4   estoppel: "The doctrine [most appropriately] applies when `(1) the same party has taken two

5   positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3)

6   the party was successful in asserting the first position (i.e., the tribunal adopted the position or

7   accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not

8   taken as a result of ignorance, fraud, or mistake.'" *Aguilar v. Lerner,* 32 Cal.4th 974, 986-987

9   (2004).

10      In the state court action, in which Jacobsen was the only plaintiff, Aurora contended that

11  Jacobsen had no standing under the loan to bring the action, and, thus, necessarily took the

12  position that no privity existed between the non-borrower Jacobsen and the borrower O'Brien –

13  despite the assignments from O'Brien to Jacobsen.  Declaration of Michael Yesk In Support Of

14  Reply To Opposition To Plaintiff's Motion For Partial Summary Judgment (Doc. # 29), ¶ 4, Exh.

15  C, p. 4, ¶ 1.  In contrast, here, Aurora takes the opposite position – that privity exists between

16  Jacobsen and O'Brien by virtue of the assignments from O'Brien to Jacobsen.  Defendants'

17  Memorandum of Points and Authorities In Support of Motion for Summary Judgment, p. 22, ¶ 2.

18  Both positions were in judicial proceedings and both are totally inconsistent with each other.

19  Thus, the *Aguilar* factors one, two and four are met.

20      Although the state court initially issued a tentative ruling sustaining Aurora's demurrer as

21  unopposed, it allowed Jacobsen to file a late Opposition to the same.  Declaration of Michael

22  Yesk In Support Of Reply To Opposition To Plaintiff's Motion For Partial Summary Judgment

23  (Docs. # 29 & 30), ¶ 3, Exh. B.  Ultimately, the state court sustained Aurora's demurrer without

24  leave to amend.  Similarly, the state court sustained another defendant's demurrer, Greenpoint

25  Mortgage Funding, Inc., based on the same standing argument underpinned by the contention that

26  Jacobsen lacked privity with O'Brien.  Declaration of Victoria E. Edwards In Support Of Motion

27  For Summary Judgment, ¶ 4, Exh. 2.  Clearly, the state court's order on the demurrer was based

28

1  upon a successful assertion of the argument that Jacobsen lacked privity with O'Brien.

2  Therefore, the third *Aguilar* factor has been met.

3      Lastly, there is no indication that Aurora took its previous position as a result of

4  ignorance, fraud or mistake.  Therefore, the fifth and final *Aguilar* factor has been met and,

5  consequently, Aurora should be judicially estopped from claiming privity exists between

6  Jacobsen and O'Brien.

7      Additionally, since O'Brien was not a Plaintiff in the state court action and since the

8  Defendants are judicially estopped from asserting his privity with Jacobsen in this action, claim

9  preclusion does not apply as to O'Brien's claims herein.  As noted by Defendants, claim

10  preclusion only applies to subsequent claims of parties and their privies.  In regard to O'Brien's

11  claims herein, that is not the case.

12      Moreover, to the extent Defendants argue that they are entitled to summary judgment as to

13  the entire action, they are mistaken because this action alleges additional facts indicating that not

14  only was the loan hereunder void, but, also, that any amount due under the purported loan was

15  paid or waived by Defendants.  Therefore, any final judgment on the merits in the state court

16  proceeding could not be based upon a full and fair adjudication of such additional allegations

17  presented here.

18      Finally, the defense of claim preclusion may be waived.  If, after making a motion under

19  Fed. R. Civ. Pro. 12 ("Rule 12"), a defense that is available to a defendant is not made therein, the

20  defendant may not raise that defense in a subsequent motion under Rule 12, unless it is a non-

21  waivable defense or in a motion for judgment on the pleadings.  See, Fed. R. Civ. Pro. 7(a), 12(c),

22  12(h) and 19(b).  Here, Aurora cross-moves for summary judgment on claim preclusion, but has

23  not yet answered Plaintiffs' complaint.  Such is not permitted under the above-cited rules. Having

24  been a defendant in Jacobsen's state court action, Aurora knew of the judgment entered in the

25  same.  Thus, the defense of claim preclusion was available to it, but it chose not to raise such a

26  defense in its previous Rule 12 motion made herein.  Therefore, Defendants have waived the

27  defense of claim preclusion.

28

**C.   WHETHER OR NOT A DBA WAS FILED BY VALID CORPORATION IN THE NAME OF "DIRECT FUNDING", THE PURPORTED LENDER HEREIN, "DIRECT FUNDING, A CALIFORNIA CORPORATION" DOES NOT HAVE CONTRACTUAL CAPACITY; CONSEQUENTLY, THE DEED OF TRUST IS VOID**

Aurora contends that Bush & Hewitt Holding, Inc., an apparently valid California Corporation, filed a dba for "Direct Funding", and, consequently, that it had contractual capacity to be a party to the deed of trust herein. However, Aurora's contention misses the point – the deed of trust did not state the dba "Direct Funding" was the lender, it stated "Direct Funding, A California Corporation" was the lender. Likewise, neither Bush & Hewitt Holding, Inc., nor Bush & Hewitt Holdings, Inc., both apparently valid corporations who filed "Direct Funding" fictitious name statements[10], filed a dba in the name of "Direct Funding, A California Corporation". Thus, no valid corporation stands behind the actual party to the deed of trust listed as lender. Therefore, the purported lender herein, "Direct Funding, A California Corporation", had no capacity to contract, and, consequently, the deed of trust herein is void.

**D.   DEFENDANTS' CASE LAW IS NOT ON POINT**

Here, Defendants cite *Handyman Connection of Sacramento, Inc. v. Sands,* 123 Cal.App.4th 867, 888 (2004), for the proposition that a party may be unidentified in a contract if it first files a fictitious name statement. However, that was not *Handyman's* holding. The issue raised and decided in *Handyman* was whether a contractor violated the contractor's licensing law by contracting in the name of a dba that was not itself licensed. In fact, the *Handyman* court talks about statutory construction near the beginning of the discussion portion of its opinion and goes on to cite the statute that its holding should be confined to: "A 'home solicitation contract' as

---

[10] While Aurora purports to attach the certificate of dissolution of Bush & Hewitt Holding, Inc., it is really the certificate of dissolution of Bush & Hewitt Holdings, Inc., tending to prove the latter apparently was also a valid California corporation until 2009. Declaration of Victoria E. Edwards In Support Of Summary Judgment Motion, ¶ 13, Exh. 11. Furthermore, each of those entities apparently had "Direct Funding" fictitious business names in effect during the period the purported loan herein was made. Declaration of Michael Yesk In Support Of Reply To Opposition To Motion For Partial Summary Judgment, ¶ 5, Exh. D. Therefore, Aurora has failed to prove Bush & Hewitt Holding, Inc., was the purported lender herein, the identity of the real lender continues to be a mystery and summary judgment should be denied because it is undisputed that "Direct Funding, A California Corporation" had no capacity to contract.

9

1    used in Civil Code section 1689.7 means 'any contract, whether single or multiple, for the sale,

2    lease, or rental of goods or services or both...'" Id., at 883.  Thus, *Handyman* concerned a

3    contract for goods or services rather than a real estate contract.  Moreover, the actual holding of

4    *Handyman* makes it clear that it only applies in the context of the particular statute analyzed, not

5    real estate contracts or contracts in general, any dicta notwithstanding: "We conclude the trial

6    court erred, but not for the reason Handyman gives. Rather, the information set out in the real

7    contract, when considered in full, substantially complied <u>with the statute</u> (emphasis added)" Id.,

8    at 887.

9         Additionally, while the *Handyman* court indicates the contract was in the name of a dba

10   and not the corporate owner of the dba, it does not indicate whether the corporate owner of the

11   dba was noted under the signature line of the contract.  If it was, the contract would be valid

12   because the parties thereto were identified despite the fact that the dba alone was listed in the

13   recitals portion of the contract.  Even if there was no indication at all of the owner of the dba in

14   the contract, the *Handyman* court made it clear that the parties signed another document prior to

15   any party performing under the existing contract that contained all the information needed to

16   properly identify the parties thereto.  That was not the case here.  Here, the homeowner was

17   forced to jump through hoops to track down a broker number or a petition at the Department of

18   Corporations and further jump through hoops to figure out that the name "Direct Funding[11]" was

19   a dba.  This is not what the legislature intended in enacting the dba laws:

20        The purpose of this section is to protect those dealing with individuals
         or partnerships doing business under fictitious names, and it is not
21        intended to confer any right or advantage on individuals or firms that
         fail to comply with the law. <u>The filing of a fictitious business name</u>
22        <u>certificate is designed to make available to the public the identities of</u>
         <u>persons doing business under the fictitious name.</u> Cal. Bus. & Prof. Code
23        §17900(a)(1);  See, also, Cal. Civ. Code § 1558.

24        Here, every document in the closing file and in the non-judicial foreclosure records listing

25   the "lender" as "Direct Funding, a California Corporation" is misleading at best and fraudulent at

---

26   [11]Contrary to Defendants' contention that a California Corporation is "***required***" to have a
     corporate suffix, such a requirement only applies to close corporations.  Cal. Corp. Code § 202(a).
27   Defendants offer no evidence that either Bush & Hewitt Holding, Inc. or Bush & Hewitt
     Holdings, Inc. were close corporations.
28

1   worst because it does not identify itself as the dba for some other entity and purports to be a

2   California Corporation in and of itself. California requires all contracts to identify the parties

3   thereto within the contract itself. Cal. Civ. Code § 1558. That one document buried in the

4   closing file may provide a lead that a mortgage broker with the same name as the purported

5   lender may be a dba does not comply with the law. Here, both the purported note and deed of

6   trust list the "lender" as "Direct Funding, a California Corporation" with absolutely no indication

7   that the same is actually a dba of another entity.

8       In short, Defendants have failed to cite any authority for the proposition that an entity may

9   lawfully contract in the name of a dba without identifying the entity that owns that dba in the

10  contract itself. Allowing the purported note and deed of trust herein to stand simply because a

11  valid entity filed a dba named "Direct Funding" would directly offend the fictitious business

12  name law (Cal. Bus. & Prof. Code §17900, et. seq.) and the Civil Code (§ 1558), voiding the

13  same for illegality. Cal. Civil Code § 1667 states:

14      That is not lawful which is:
        1. Contrary to an express provision of law;
15      2. Contrary to the policy of express law, though not expressly
        prohibited; or,
16      3. Otherwise contrary to good morals.

17      Here, the hiding of the true lender in the deed of trust violated all of the above. Therefore,

18  the deed of trust is void for illegality.

19      **E.    AURORA HAS NOT RAISED AN ISSUE OF DISPUTED FACT
               REGARDING THE FAILURE OF THE CONTRACT TO IDENTIFY THE
20             PARTIES THERETO**

21      Plaintiffs contend in their FAC that the deed of trust failed to identify the lender who was

22  a party to the same. See, FAC, ¶¶ 13, 16, 20 & 31. Aurora claims Plaintiffs should have known

23  that Direct Funding was a dba of Bush & Hewitt Holding, Inc because a paper buried in the

24  closing file gave a hint in the form of a broker number. However, this claim fails for several

25  reasons. First, in the paper attached to the Trompisz Declaration In Support Of Defendants'

26  Motion for Summary Judgment as Exhibit 9, entitled "California Borrower Acknowledgment",

27  there are two sets of information given. On the left side of the form "lender" information is

28  given. On the right side of the form "broker" information is given. It is on the right side of the

11

1  form, under the "broker" section of the form, that the <u>broker's</u> identifying number is given.

2  However, <u>no identifying number is given on the left side of the form for the lender, also purported</u>

3  <u>to be "Direct Funding."</u>

4        Thus, the information available to O'Brien on this form was that "Direct Funding" was

5  purportedly acting in a dual capacity – as lender and mortgage broker, or that the lender and

6  mortgage broker were owned by two different entities. Yet, only the information regarding

7  "Direct Funding" acting in the capacity of lender would seem to be relevant to the identity of the

8  authorized lender under the note and deed of trust, since "Direct Funding" is listed as "lender" on

9  each rather than mortgage broker.

10       Moreover, that "Direct Funding" may have been acting in such a dual capacity begs the

11 question of "in which capacity was Direct Funding acting under the note and deed of trust?"

12       Finally, the fact that there was no "lender" number indicated on such form tends to prove

13 that "Direct Funding" was not authorized by the State of California to be a lender or, by not

14 listing the lender number for Bush and Hewitt Holding, Inc. – if it had one – was trying to conceal

15 and mislead O'Brien as to the true identity of his lender. Such underhanded behavior is exactly

16 what the ficticious business name laws cited by Aurora were trying to prevent.

17       Second, contrary to the assertions of Defendants, a search of the ficticious names database

18 for Riverside County for the dba "Direct Funding" brings up not three "hits" but <u>seven</u>.

19 Declaration of Michael Yesk In Support Of Reply To Opposition To Motion For Partial Summary

20 Judgment, ¶ 5, Exh. D. While three of those "hits" are for "Direct Funding" dba names that had

21 expired or were abandoned at the time of the purported loan to O'Brien, the other four were

22 current at the time of the purported loan herein. Three of them appeared to belong to Bush &

23 Hewitt Holding, Inc., as contended by Defendants. However, the fourth dba belonged to Bush &

24 Hewitt Holdin<u>gs</u>, Inc. Id., ¶ 6, Exh. E.

25       Third, Defendants give no indication whether a website giving Riverside County dba

26 information actually existed at the time of the purported loan to O'Brien, or, if it did, whether the

27 information given at that time showed the same information it does now.

28

Fourth, the "California Borrower Acknowledgment" proffered by Aurora is the only document in the entire closing file or within the non-judicial foreclosure documents that gives any hint that "Direct Funding" may be a dba of someone else. Even in such case, the dba was revealed to belong to a mortgage broker, not a lender. Every other document meticulously lists the "lender" as either "Direct Funding" or "Direct Funding, a California Corporation" further increasing the occlusion and confusion regarding the identity of the true lender.

In light of Defendants' sleuthing, one thing is clear: any information available to O'Brien was uncertain, misleading and inconsistent. Therefore, the purported lender under the deed of trust remains unidentified, in violation of the express law of Cal. Civ. Code § 1558, that requires the parties to a contract be identified for the contract to be valid.

## F.   PLAINTIFF'S ARE NOT REQUIRED TO TENDER

Should the Court reject Plaintiffs' argument Aurora rejected a tender of the loan amount, Plaintiffs are not required to tender in the circumstances presented herein. Aurora contends it is entitled to summary judgment for Plaintiffs' failure to tender the amount purportedly due under the purported loan. However, Aurora ignores long standing law that states tender is not required where the underlying validity of the loan is disputed. *Stockton v. Newman,* 148 Cal.App.2d 558, 564 (1957) (If a borrower's action attacks the underlying validity of a debt, a tender is not required since it would constitute an affirmance of the debt); See, also, *Lona v. Citibank, NA,* 202 Cal.App.4th 89 (2011).

As previously established, any deed of trust herein was ineffective due to the note and deed of trust being void. The tender rule does not apply where it is alleged that the note and deed of trust are void. See, *Ottolini v. Bank of Am.*, 2011 U.S. Dist. LEXIS 92900, 9-11 (N.D. Cal. Aug. 19, 2011).

Moreover, Aurora, cannot be heard in a court of equity complaining about the equities possessed by Plaintiffs as the equities between the parties do not require the posting of a bond. See, *Humboldt Sav. Bank v. McCleverty,* 161 Cal. 285, 291 (1911) (Where the loan is void, the equities do not require posting of a bond).

Furthermore, Plaintiffs claim damages against the purported beneficiary herein, Aurora.

13

1   In such a case, tender should not be required. *Hauger v. Gates,* 42 Cal.2d 752, 755 (1954) (A

2   tender will not be required when the one who seeks to set aside the trustee's sale has a

3   counterclaim or setoff against the lender).

4       Consequently, no tender by Plaintiff is required. In any event, if the Court requires

5   Plaintiff to post a bond, Plaintiff asks that the property itself be used to secure the bond instead

6   of a monetary amount. See, *Wallace v. Miller,* 140 Cal.App.3d 636 (1983); see, also, *Biasca v.*

7   *Superior Court,* 194 Cal. 366 (1924).

8       ## G.    NO EQUITABLE LIEN CAN ARISE FROM A VOID CONTRACT

9       For the same reason that Plaintiffs are not required to tender the amount of the purported

10  loan, they are not subject to an equitable lien purportedly arising from it. Contrary to the

11  contentions of Aurora, an equitable lien may not arise from a deed of trust that was void *ab initio,*

12  except in the hands of a holder in due course. Having been aware that the true lender was not

13  revealed in the purported note and deed of trust, Aurora had notice that the same were void, and,

14  consequently it could not be a holder in due course. In the case of *Howell v. Dowling,* 52

15  Cal.App.2d 487 (1942), the question of whether an equitable lien may arise out of a deed of trust

16  procured by fraud – and thus void – was considered. It was found that a later executed deed of

17  trust had priority over the previously executed deed of trust because no lien could be created out

18  of the prior void deed of trust. Id.

19      In any event, Aurora admits it was acting merely as an agent for the holder of the note,

20  even while contending it was in possession of the same. See, Defendants' Memorandum of

21  Points and Authorities In Support Of Motion for Summary Judgment, pgs. 5-7. Aurora was a non-

22  holder in possession of the note acting for the holder of the note. Id. Consequently, it was not a

23  holder in due course and is not entitled to an equitable lien.

24      Defendants cite a case, *Mendez-Cardona v. Saxon Mortgage, Inc.*, No. G043420,

25  2011WL579205 at *5, (Cal. Ct. App. February 18, 2011) (unpub.), that purports to stand for the

26  proposition that Defendant Aurora is entitled to an equitable lien on the property. However,

27  Aurora has waived any equitable lien and/or such lien was satisfied by proceeding with non-

28  judicial foreclosure of the property. Having sought relief pursuant to the purported deed of trust,

1  knowingly waiving any alternative relief, Aurora cannot now claim an equitable lien on the

2  property. See, Cal. Code Civ. Proc. § 726 ("there can be but one form of action for the recovery

3  of any debt, or the enforcement of any right secured by mortgage upon real property…").

4  Furthermore, Aurora, in its demurrer to the state court case, did not raise equitable lien as

5  an affirmative defense to Plaintiff's claim to quiet title. Declaration of Michael Yesk In Support

6  Of Reply To Opposition To Plaintiff's Motion For Partial Summary Judgment, ¶ 4, Exh. C.

7  Aurora ignored Plaintiff's claims regarding Direct Funding, relying instead completely upon its

8  defense of lack of standing under the purported deed of trust. Id. Consequently, Aurora is

9  judicially estopped from asserting it has an equitable lien, or, at the very least, asserting that such

10 an equitable lien concerned the property herein.

11 Finally, under well settled California authority, there can be no ratification of a void

12 contract. *McCracken v. San Francisco,* 16 Cal. 591 (1860). The Ninth Circuit United States

13 Court of Appeals agrees. *Hirschfeld v. Mckinley*, 78 F.2d 124 (9th Cir. 1935) ["…the doctrine of

14 estoppel by conduct or by laches, or even ratification, has no application to a contract or

15 instrument which is void because it violates an express mandate of the law or the dictates of

16 public policy." (emphasis added)]. Thus, to the extent Aurora cites cases regarding ratification of

17 a loan that was merely voidable, such cases are inapposite and provide no authority in this case.

18 ## H. AURORA HAD NO AUTHORITY TO PURCHASE THE PROPERTY WITH A CREDIT BID AT THE TRUSTEE'S SALE

19 Despite Aurora pointing out the trustee's deed indicates it paid cash for the property at the

20 trustee's sale, such a recital is rebutted by Jacobsen who was actually at the trustee's sale where

21 Aurora was absent. Jacobsen recounts that the trustee's representative indicated the high bid was

22 a credit bid from the "lender". Jacobsen Decl., ¶ 3. However, neither the deed of trust nor the

23 notice of sale provide for anything but cash or check to be used in bidding at a trustee's sale.

24 FAC, Exh. L; Declaration of Kristen Trompisz In Support Of Defendants' Motion for Summary

25 Judgment, ¶ 9, Exh. 3. Thus, it is clear the parties to the deed of trust intended that a credit bid

26 could not be used to purchase the property at the trustee's sale.

27

28

1    However, if the Court believes the issue of Aurora's credit bid herein is governed by

2    statute, California Civil Code Section 2924h(b) states: "The present beneficiary of the deed of

3    trust under foreclosure shall have the right to offset his or her bid or bids only to the extent of the

4    total amount due the beneficiary including the trustee's fees and expenses (emphasis added).

5    Here, Aurora states it was not the beneficiary and never owned the purported loan.  See,

6    Memorandum of Points and Authorities In Support of Defendants' Motion for Summary

7    Judgment, pgs. 5-7. Aurora contends it only acquired rights to service the purported loan.  In

8    other words, Aurora is merely the agent of the true beneficiary of the deed of trust and the holder

9    of the note.  However, despite other sections of California's non-judicial foreclosure statutory

10   scheme providing for agents of a beneficiary to do certain things on their behalf, i.e., file a notice

11   of default and file a notice of sale, it is clear that the Legislature intended that only the beneficiary

12   may purchase a property with a credit bid at the trustee's sale.

13   **I.    PLAINTIFFS OBJECT TO AURORA'S EVIDENCE**

14   Aurora moves for summary judgment based on what it contends are the undisputed facts

15   that the purported loan was in default and that a foreclosure sale was regularly conducted.

16   Trompisz Decl., ¶¶ 7-10, Exhs. 1-4; ¶¶ 16, 18-19, 21-23, Exhs. 5-10, respectively.  However,

17   Federal Rules of Civil Procedure, Rule 56(c)(1)(A) establishes the rules determining what

18   materials may be considered on Summary Judgment:

19          (c) Procedures.

20          (1) Supporting Factual Positions. A party asserting that a fact cannot be or is
            genuinely disputed must support the assertion by:

21

22          (A) citing to particular parts of materials in the record, including depositions,
            documents, electronically stored information, affidavits or declarations,
            stipulations (including those made for purposes of the motion only), admissions,

23          interrogatory answers, or other materials; or

24          (B) showing that the materials cited do not establish the absence or presence of a
            genuine dispute, or that an adverse party cannot produce admissible evidence to

25          support the fact.

26   Additionally, Federal Rules of Civil Procedure, Rule 56(c)(2) requires such materials to be

27   evidence in admissible form:

28

1

2

> (2) Objection That a Fact Is Not Supported by Admissible Evidence. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

3

4

5

6

7

8

9

Here, Aurora offers several documents purporting to affect the purported loan or foreclosure of the property, including a Notice of Assignment, Sale or Transfer of Servicing Rights dated February 27, 2007, Promissory Note, Deed of Trust, Corporate Assignment of Deed of Trust, Payment History, July 21, 2011 Letter from Aurora to O'Brien, Trustee's Deed Upon Sale, Notice of Assignment, Sale or Transfer of Servicing Rights dated November 22, 2006, California Borrower Acknowledgment and a HUD-1 Settlement Statement. Trompisz Decl., ¶¶ 7-10, Exhs. 1-4; ¶¶ 16, 18-19, 21-23, Exhs. 5-10, respectively.

10

11

12

13

14

15

As to the purported Deed of Trust, Corporate Assignment of Deed of Trust and Trustee's Deed Upon Sale, that are apparently copies of public records, the same are not properly authenticated as certified copies of public records because they are not accompanied by a certificate of the custodian of records certifying the records are correct, as required by Fed. R. Evid. 902(4). Since Aurora offers those documents for the truth of the matters asserted therein, they should be excluded from evidence as hearsay.

16

17

18

19

20

21

22

23

24

25

26

As to the purported Notice of Assignment, Sale or Transfer of Servicing Rights dated February 27, 2007, Promissory Note, Payment History, July 21, 2011 Letter from Aurora to O'Brien, Notice of Assignment, Sale or Transfer of Servicing Rights dated November 22, 2006, California Borrower Acknowledgment and HUD-1 Settlement Statement, the same are likewise not properly authenticated due to Trompisz' lack of personal knowledge thereof. According to Trompisz' Declaration, she has personal knowledge of all facts stated therein by virtue of the fact that she has seen the copies of the documents she attaches thereon: "I have personal knowledge of the facts contained in this declaration by virtue of my review and analysis of the relevant business records and other documents of Aurora Loan and Aurora Bank attached and referenced herein." However, these documents are not authenticated simply because Trompisz has reviewed or analyzed copies of them and concluded they are business records. Here, there is no indication

27

28

1   that Trompisz has actually seen the original documents or even compared the copies to the

2   originals. Fed. R. Evid. 901(b)(1).

3           Furthermore, Trompisz makes the statement that she – at some undisclosed time – worked

4   for the servicer of the purported loan prior to working for her current employer, Aurora Bank,

5   who is the current servicer: "previously I was Legal Liason for Aurora Loan Services, LLC…"

6   That statement is conspicuously absent from her Declaration In Support of Defendant's

7   Opposition to Plaintiff's Motion for Partial Summary Judgment herein. See, Document #28,

8   Attachment #2, ¶ 2.

9           Despite this effort to overcome Plaintiff's objection to her lack of personal knowledge

10  regarding the previous servicer's documents demonstrated in Trompisz' Declaration In Support of

11  Defendant's Opposition to Plaintiff's Motion for Partial Summary Judgment, the addition of a

12  statement that she used to work for such servicer is unavailing to show personal knowledge of the

13  facts she attempts to prove here.

14          First, there is no indication in the instant declaration that she had occasion to view the

15  originals of any of the purported loan documents applicable to this case. Second, even if

16  Trompisz had previously worked for Aurora Loan Services, LLC, there is no indication in the

17  instant declaration that her previous employment was during the time that the purported loan

18  herein was being serviced. Again, Trompisz lacks the personal knowledge necessary to support

19  her conclusions regarding the purported loan herein.

20          Despite the contention of Trompisz that she works for the present servicer, used to work

21  for the previous servicer, is familiar with the method in which the servicer receives payments and

22  enters information based thereon into a computer database and that she is authorized to access

23  those records, she does not state that she was the one who entered the purported loan information

24  at issue herein into the database, does not state who did and does not state upon personal

25  knowledge that such information was accurately entered.

26          Furthermore, the contention of Trompisz that she is "aware" that employees of the

27  servicer – other than her-self – enter loan information into the system in the regular course of

28  business at a time when they had personal knowledge of the same does not show that she actually

18

saw those employees enter such information, and, more importantly, it does not show that Trompisz had personal knowledge of the information entered concerning the instant purported loan at the time it was entered. Similarly, Trompisz' awareness of how employees enter information, generally, does not show she has personal knowledge that certain other unidentified employees had such personal knowledge of the information entered concerning the instant purported loan.

In short, the Trompisz Declaration is, at best, an incomplete statement of the chain of custody of payment information for the instant purported loan. Aurora offers no declaration from an employee or employees who have personal knowledge of payments made concerning the instant purported loan or the lack thereof.

For example, Aurora relies upon Exhibit 5 – consisting of a computer generated printout – to show a default under the purported loan. Trompisz declares that the previous servicer, Defendant Aurora Loan Services, LLC, "transferred without change or alteration" the loan records to Aurora Bank, FSB. While Trompisz may have knowledge that certain records exist in the custody of Aurora Bank, FSB, as an employee for that entity, she does not have knowledge that the records were transferred unchanged by the previous servicer since only the employee of Aurora Loan Services, LLC who actually transferred the same might have such personal knowledge. Trompisz does not aver that she was that employee. As previously stated, there is nothing in her declaration showing she was employed by Aurora Loan Services, LLC during the period of the purported loan herein, or, if she was so employed, that she had personal knowledge of incoming payments made on such loan – or even if she knows who might have that knowledge.

While Trompisz purports to have personal knowledge of how the previous servicer generates, transfers and maintains loan records in general, she had no personal knowledge of the generation, transferal and maintenance of records for O'Brien's loan or the truth of any of the matters contained therein.

Furthermore, while Trompisz states she is authorized to access the records of her employer, she does not state that she was the one who accessed the particular records attached to her declaration – she only states that she "reviewed" them.

19

1    Additionally, that printout cannot be evidence of a default under the purported loan, not

2    only because it is hearsay[12], but also because it only purports to show transactions under the

3    purported loan that were made after Aurora became the servicer of such purported loan and

4    because such printout only purports to show O'Brien's payments under the purported loan rather

5    than all payments received that are properly creditable to any balance due under such purported

6    loan.  Aurora admits the loan existed before Defendant Aurora Loan Services, LLC or Aurora

7    Bank, FSB became its servicer.  Defendants' Memorandum of Points and Authorities IOT Motion

8    For Partial Summary Judgment, p. 3, ¶ 3; Edwards Declaration IOT Plaintiff's Motion For Partial

9    Summary Judgment, Exh. 9; Trompisz Declaration IOT Plaintiff's Motion For Partial Summary

10   Judgment, ¶¶ 2 & 7.  However, Aurora does not present any evidence of the loan prior to the time

11   it became servicer.  See, Trompisz Declaration IOT Plaintiff's Motion For Partial Summary

12   Judgment. Exh. 2, which indicates the loan accounting therein started approximately four months

13   after the purported loan was originated.  Moreover, while Trompisz avers in her declaration that

14   all the records of the servicer before Aurora Bank – Aurora Loan – were without change or

15   alteration, she does not state that the records received from the servicer prior to Aurora Loan from

16   Greenpoint Mortgage Funding, Inc. were without change or alteration.

17   Due to the foregoing, there exists no foundation for submission of Aurora's purported

18   account of payments under the purported loan into evidence where the same is offered to show a

19   default under the purported loan.  Such an incomplete accounting is insufficient to show a default

20   under the purported loan, not only because it shows no loan activity prior to Aurora becoming

21   servicer, but also because it does not show accounting of payments made by others besides

22   O'Brien.  Here, Plaintiffs allege in their FAC that there is no default under the purported loan.

23   See, FAC, ¶¶ 49-53.  Until such complete accounting of payments concerning the purported loan

---

[12] Trompisz makes no statement that she has personal knowledge of the information that the printout purports to be a record of.  Therefore, she cannot have had personal knowledge of almost all of the purported facts noted in the printout she seeks to have considered as evidence in this summary judgment motion.  Also, assuming the undisclosed employees of the entity servicing the purported loan prior to declarant's employer taking over such duties were entering credits on the purported loan balance based on checks or other information indicating a payment was made, the information in the printout contains at least three layers of hearsay.

20

are revealed in discovery, whether or not there has been a default under the loan is in dispute and summary judgment may not be granted to Aurora on that issue herein.

Additionally, all of the documents attached to the Trompisz declaration are offered for the truth of the matters asserted therein and, consequently, are hearsay.

Finally, all of the Exhibits attached to the Declaration of Victoria Edwards In Support Of Defendants' Summary Judgment Motion are hearsay to the extent it relies upon them to prove the truth of the matters recited therein. Moreover, none of those documents contain a certification from the custodian of records from the respective offices they purport to be generated from, and, consequently are not properly authenticated.

Therefore, all of Plaintiffs' objections to Aurora's evidence should be sustained.

## J.    LEAVE TO AMEND

Should the Court dismiss Plaintiff's claims in their entirety, Plaintiff prays for leave to amend its FAC. A copy of Plaintiff's Second Amended Complaint is provided herewith. Declaration of Michael Yesk In Opposition To Defendants' Motion For Summary Judgment, ¶ 2, Exh. A.

## IV.    CONCLUSION

In conclusion, Defendants' Motion for Summary Judgment should be denied.

Dated: May 7, 2012.

/s/ Michael Yesk
Michael Yesk, Attorney for
Plaintiffs, Michael T. O'Brien
and Robert E. Jacobsen

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:12-CV-00135-RS